Argued and submitted October 31, 2002, vacated and remanded January 29, 2003

# STATE OF OREGON,
*Appellant,*

*v.*

# MERLE LYNN HAYES,
*Respondent.*

## CF 000407; A114699

61 P3d 960

Jonathan H. Fussner, Assistant Attorney General, argued the cause for appellant. On the brief were Hardy Myers, Attorney General, Michael D. Reynolds, Solicitor General, and Ryan Kahn, Assistant Attorney General.

David E. Groom, Acting Executive Director, Office of Public Defense Services, argued the cause for respondent.

With him on the brief was Peter Gartlan, Chief Deputy Public Defender.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

HASELTON, P. J.

## HASELTON, P. J.

The state appeals from an order allowing suppression of evidence of possession of a controlled substance seized during a search of defendant's home. ORS 138.060(1)(c). The state argues that (1) the officers' approach to the back door of the residence was not a trespass under the analysis of *State v. Somfleth*, 168 Or App 414, 8 P3d 221 (2000); and (2) even if the police approached and entered defendant's residence unlawfully, defendant's subsequent consent to search was not the result of the exploitation of any prior illegality. We agree with the trial court that, under *Somfleth*, the officers' approach and entry was a trespass. However, the trial court erroneously assumed that *Somfleth* was also dispositive of the exploitation inquiry. Because of that error, we vacate and remand for the trial court to reconsider, at least, whether defendant's consent was the product of exploitation of the officers' trespass.

When viewed consistently with the trial court's findings and conclusions, *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993), the record establishes the following material facts: On June 27, 2000, Detective Mike Davis and three other officers went to defendant's home in Milton-Freewater to investigate complaints of suspected drug activity. The front door of defendant's home was visible from the street, but the back door was not. There was no pathway to the front door, but, although the front yard had lilacs in it, the yard was not so overgrown as to preclude access to the front door. Without exception, strangers to defendant's property, including Girl Scouts and solicitors, had always approached and used the front door and not the back door.[1]

There was no doorbell on the back door or any other indication that the back door was to be used by strangers. Nevertheless, the officers pulled into a gravel driveway next to the house and approached the back door, not the front door, because, in Davis's view, "[i]t appeared that that was the one that was used * * *." When Davis knocked on the back door, defendant's girlfriend, Garve, who did not live in

---

[1] Defendant's property was not fenced or gated and there were no "No Trespassing" signs anywhere on the property.

the house, opened the door. Garve "allegedly gave permission to enter."[2]

Davis then entered the home, stepping into the kitchen, with some or all of the other officers following. Just as Davis left the kitchen, he encountered defendant. Davis identified himself, explained that he and the other officers were investigating complaints of drug activity, and then asked defendant if he had a "personal stash." Defendant replied that he did—and that he snorted and smoked meth-amphetamine. Davis then asked defendant for consent to search, and defendant agreed. The ensuing search yielded methamphetamine and marijuana.

Defendant was charged with possession of a con-trolled substance, ORS 475.992, frequenting a place where a controlled substance is used, ORS 167.222, and possession of less than one ounce of marijuana, ORS 475.992(4)(f). Defen-dant moved to suppress the evidence found in his home. He argued, particularly, that (1) the officers' approach to the back door was a trespass under *Somfleth*; (2) Garve lacked actual authority to consent to the entry; and (3) defendant's subsequent consent to search was either the product of the antecedent illegal trespass and entry into the home or was involuntary. In making those arguments, defendant, while generally invoking both Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution, relied exclusively on state decisional authority. That is, defendant offered no separate analysis under the federal constitution. Defendant also, and alterna-tively, argued that suppression was required because the offi-cers had not advised defendant of his *Miranda* rights before asking him about his drug usage and requesting his consent to search.

The state, in response, contended that there was no trespass under *Somfleth*; that Garve consented in fact to the entry into the home; and that, regardless of any trespass or

---

[2] The quoted language is from the trial court's memorandum opinion. Although Davis testified at the suppression hearing that Garve consented to the entry, the trial court—as its use of "allegedly" indicates—did not necessarily credit that aspect of Davis's testimony. The significance of that nondetermination is addressed below. 186 Or App at 57-58.

Garve's actual authority to consent to enter, under *State v. Rodriguez*, 317 Or 27, 854 P2d 399 (1993), defendant's consent to search was not the product of exploitation of any prior illegality. As with defendant's memorandum, the state's memorandum focused exclusively on state constitutional analysis, citing only state appellate decisions. Finally, defendant countered with a reply memorandum that, again, framed the analysis exclusively by reference to state authority, particularly *Somfleth* and *Rodriguez*.

After an evidentiary hearing, the trial court granted suppression. After quoting extensively from *Somfleth*, the court held:

> "This case is similar to the analysis in *Somfleth*. The officers knocked on the back door. The girlfriend answered and allegedly gave permission to enter. The back door is not observed from the street. There is no doorbell at the back door. The defendant testified solicitors came to his front door.

> "This court is required to follow the rule conceived in *Somfleth*. Therefore the motion to suppress is granted."[3]

On appeal, the state advances two arguments. First, the state argues that the trial court erred in determining that, under *Somfleth*, the officers' approach to the back door was a trespass. Second, the state argues that, even if there was an antecedent trespass, the record does not demonstrate that defendant's consent was obtained as a result of exploitation of any prior illegality.[4] Defendant responds that not only did the police commit a trespass under *Somfleth*, but they also impermissibly entered the house because Garve had, at best, only apparent, not actual, authority. *See, e.g.,*

---

[3] The trial court did not rule on defendant's alternative *Miranda*-based argument, and defendant does not advance that argument as an alternative basis for affirmance on appeal. Consequently, that matter is not before us.

[4] The state does not dispute on this record that Garve had only apparent authority to consent to the officers' entry into the home. Thus, if the officers entered the home pursuant to Garve's consent, that entry would have been illegal for purposes of state, but not federal, constitutional law. *See State v. Ready*, 148 Or App 149, 152-53 & n 4, 939 P2d 117, *rev den*, 326 Or 68 (1997) (noting that under Article I, section 9, "the third party must have actual authority to consent" but that, under the Fourth Amendment, as explained in *Illinois v. Rodriguez*, 497 US 177, 110 S Ct 2793, 111 L Ed 2d 148 (1990), "consent of a third party may be valid if it is based on 'apparent authority' ").

*State v. Wrenn*, 150 Or App 96, 103-04, 945 P2d 608 (1997) (state has burden of proving that the person who consented to search had actual authority to consent); *Ready*, 148 Or App at 152-53 (under Article I, section 9, third party consenting to search must have actual authority to consent). Defendant further argues that the exploitation analysis prescribed by *Rodriguez* and later cases[5] is inapposite because this case involved two antecedent illegalities—the trespassory approach to the back door and the entry into the home based on apparent authority—and not just one:

> "[T]o defendant's knowledge, in those Oregon cases in which the state has successfully introduced evidence despite the presence of a prior illegality, the illegality was singular. In other words, no Oregon case has admitted evidence following *multiple* unlawful intrusions into constitutional rights.
>
> "Defendant does not suggest that there is an articulated bright line principle that prohibits the introduction of evidence following multiple illegalities. Rather, defendant notes that there are weighty policy concerns and significant ramifications underlying the state's proposed rule. For example, one would expect that the judiciary would be hesitant if not loath to condone the introduction of evidence that was obtained only after serial violations of an individual's constitutional rights. At a minimum, such a rule would detract from the appearance of judicial impartiality and potentially engender a culture of judicial complicity where the courts would routinely overlook multiple excesses of the executive branch of government."

(Emphasis in original.) Finally, defendant argues, as an alternative basis for affirmance, that, regardless of the analysis under Oregon law, there is an independent and sufficient basis for suppression under the Fourth Amendment. In that regard, defendant particularly invokes aspects of the Court's analysis in *New York v. Harris*, 495 US 14, 110 S Ct 1640, 109 L Ed 2d 13 (1990).

---

[5] *See, e.g., State v. Hall*, 183 Or App 48, 50 P3d 1258 (2002); *State v. Stanley*, 139 Or App 526, 912 P2d 948 (1996), *rev'd on other grounds*, 325 Or 239, 935 P2d 1202 (1997).

■ We agree with defendant and the trial court that the officers' approach to the back door of defendant's home constituted a trespass under *Somfleth*. In *Somfleth*, we framed the inquiry:

"Our cases have treated location as, in effect, giving rise to rebuttable 'presumptions.' The fundamental principle, as emphasized in [*State v.*] *Ohling*[,70 Or App 249, 688 P2d 1384, *rev den*, 298 Or 334 (1984)], is that intrusions onto residential curtilage are deemed to be trespasses unless the entry is 'privileged or [has] defendant's express or implied consent.' 70 Or App at 252. Nevertheless, given prevailing social norms, the homeowner is presumed to have implicitly consented to entry into the front yard to approach the front door. Conversely, also given prevailing norms, such a presumption of implied consent to enter is not ascribed to other areas of the curtilage. *See Ohling*, 70 Or App at 253 ('Going to the back of the house is a different matter.'). Rather, entry onto those areas is presumptively a trespass. *Id.*

"Nevertheless, that presumptive treatment is not necessarily conclusive: A homeowner can abrogate the presumption of implied consent to approach the front door by undertaking sufficient steps to exclude casual visitors from the front yard. *See Ohling*, 70 Or App at 253. Conversely, the presumption that other invasions of the curtilage are trespasses can be overcome by evidence that the homeowner has sufficiently implicitly or explicitly invited entry."

168 Or App at 424-25.

Here, as the trial court determined, the state failed to adduce sufficient facts to rebut the presumption that the officers' approach to the back door of defendant's home was a trespass. In particular, the evidence established that the back door was not visible from the public street providing access to defendant's home and that there was no doorbell on the back door. *See Somfleth*, 168 Or App at 424-27 (comparing circumstances in *Somfleth* and *State v. Glines*, 134 Or App 21, 894 P2d 516, *rev den*, 321 Or 512 (1995), where, unlike in *Somfleth*, there was a "doorbell on the side entrance" that the officers approached, that entrance "was visible from the public sidewalk," and that entrance was "directly accessible from the common driveway" that Glines shared with his neighbors). Moreover, it was uncontroverted

that, with the exception of the officers in this case, all other strangers who visited the property, including Girl Scouts and other solicitors, used only the front door.

■     Our agreement that there was a trespass does not, however, end the matter. As noted, the state asserted that, even if there was an antecedent unlawful conduct—the approach to the back door and/or the entry into the home based on Garve's legally insufficient consent—the record does not permit a determination that defendant's ultimate consent to search was the product of impermissible exploitation of any prior illegality. *See State v. Cardell*, 180 Or App 104, 113, 41 P3d 1111 (2002) ("A defendant, as the party seeking to suppress secondary evidence on the theory that it was derived from prior illegal police conduct, has the initial burden of establishing a sufficient factual nexus between that prior illegality and the secondary evidence. * * * Once the defendant has established that factual nexus, the burden shifts to the government to demonstrate that the challenged evidence is not derivative of that prior illegality." (Footnote and citations omitted.)). We decline to reach and resolve the merits of the state's "nonexploitation" argument. Instead, because it appears that the trial court's consideration of the exploitation issue was based on an erroneous assumption, we remand for reconsideration.

The trial court's findings and conclusions in its memorandum opinion include no explicit reference to exploitation. Nor does the order granting suppression include any such reference. Instead, the court's opinion refers exclusively to *Somfleth* and then concludes, "This court is required to follow the rule conceived in *Somfleth* * * * [t]herefore the motion to suppress is granted." From that treatment, it appears that the trial court understood *Somfleth* to be dispositive not only of the trespass issue but also of the question of exploitation. That is incorrect.

In *Somfleth*, the state did not dispute that the consent to search was the product of exploitation of observations made in the course of the trespass. *Somfleth*, 168 Or App at 427. Consequently, we had no occasion to address exploitation in any substantive fashion. Nothing in *Somfleth* obviates or controls the determination of exploitation in this case.

We thus remand for the trial court to consider and resolve the issue of exploitation under the standards described in *Rodriguez*, *Hall*, and *Cardell*. Depending on the outcome of that inquiry, it may be necessary for the court to consider other matters raised by the parties, including the voluntariness of defendant's consent, defendant's *Miranda*-based arguments, and defendant's present arguments under the Fourth Amendment.

In remanding, we necessarily reject defendant's argument, made for the first time on appeal, that, because there were multiple antecedent illegalities, the exploitation analysis prescribed in *Rodriguez*, and refined in subsequent cases, is inapposite. *See* 186 Or App at 53-54. If defendant were correct in that regard, a remand would be unnecessary. We perceive nothing in our precedents that supports the distinction that defendant posits. We cannot divine any legally supportable basis for denying suppression where a defendant's consent is not the result of exploitation of one prior illegality—but compelling suppression where the consent is not the result of exploitation of two prior illegalities. Or three, or four.

Finally, in remanding, we decline to address the merits of defendant's asserted alternative basis for affirmance under the Fourth Amendment and, particularly, *Harris*. We do so for two reasons. First, as described above, no separate federal constitutional analysis on this issue was raised and developed in the trial court.[6] Rather, defendant merely cited the Fourth Amendment, without any analytic amplification. *See generally State v. Chavez*, 335 Or 44, 48, 56 P3d 923 (2002) (addressing preservation requirements).

Second, it is at least arguable that a material factor in the Court's analysis in *Harris* was that the officers there entered the defendant's residence without *any* consent. Here, as noted, the trial court did not explicitly find that Garve had, in fact, agreed to the officers' entry. *See* 186 Or App at 52 n 2.

---

[6] As noted above, defendant's *Miranda*-based arguments are not repeated on appeal. *See* 186 Or App at 53 n 3.

Because of the differences between the state and federal constitutions as to the lawfulness of entry pursuant to the consent of a third party with apparent authority, *see, e.g., Ready,* 148 Or App at 152-53 & n 4, the trial court's determination of whether Garve did, in fact, agree to the officers' entry into the home could assist the resolution of any federal constitutional concerns.

Vacated and remanded.