Argued and submitted January 21, 2014, reversed and remanded July 22, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TIMOTHY ALLAN COX,
*Defendant-Appellant.*

Marion County Circuit Court
11C51417; A150871

272 P3d 390

Robin A. Jones, Senior Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Ryan Kahn, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Duncan, Presiding Judge, and Nakamoto, Judge, and DeVore, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

Defendant appeals a judgment of conviction for five counts of sodomy in the first degree (Counts 1-5), ORS 163.045, and two counts of sexual abuse in the first degree (Counts 6 and 7), ORS 163.427. Defendant was charged in a single, multiple-count indictment in 2011, after allegations came to light that he had repeatedly sodomized and sexually abused his daughter, W, for years when she was a minor. Those allegations were the basis for Counts 1 through 6. While investigating those allegations, police learned that a second relative, C, had previously accused defendant of sexually abusing her on one occasion in 1999, when she was a minor. That allegation was the basis for Count 7.

Defendant raises seven assignments of error. In three of those, he argues that the trial court should have granted his pretrial motions to, one, sever the charges related to each victim and, two, exclude the entirety of a tape-recorded phone conversation between W and defendant or, alternatively, specific statements made in that recording. In the remaining four assignments of error, defendant challenges various rulings by the court during trial regarding the prosecutor's attempts to elicit or exploit evidence that defendant was a methamphetamine addict at the time of the conduct charged in the indictment. In two of those assignments, defendant contends that the trial court erroneously denied his motion for a mistrial. For the reasons explained below, we agree with defendant that the trial court should have granted a mistrial, and we reverse and remand for a new trial. We also address defendant's challenge to the court's denial of his motion to sever, because that ruling will likely affect any retrial on remand. However, we do not reach defendant's other assignments of error to the court's evidentiary rulings before and during trial, because the evidentiary issues may be litigated differently on remand.

## I. MOTION TO SEVER

We begin by relating the allegations of W and of C, which are relevant to defendant's pretrial motion to sever the count alleging that defendant sexually abused C. W, the adult daughter of defendant, testified at trial that, beginning

when she was five years old, defendant repeatedly and regularly sexually abused and sodomized her. When W was 10 years old, her parents separated, and defendant moved out of the house, although he continued to visit the home frequently and to sexually abuse W. The abuse ceased one night, when W was around 12 years old, after she told defendant to stop. W then avoided contact with defendant, speaking to him only once or twice over the next few years and then having no contact with him for the following six to seven years. During that time, W never told anybody about the abuse.

In 2010, several of W's family members began encouraging her to reconnect with defendant. W agreed to attend defendant's birthday party and later saw defendant at another family function that year. Then, in 2011, when W was 22 years old, she revealed to her mother that defendant had sexually abused her when she was a child.

Upon learning of the alleged abuse, W's mother called the Marion County Sheriff's Office, which began investigating W's allegations. The investigation included a "pretext" phone call from W to defendant, which a deputy sheriff recorded.[1] During the call, W confronted defendant, asking him why he had touched her and whether he remembered doing so. She referred to "everything that happened, from the time I can remember until I was about 12." She also used the word "molested" in place of "touched" once during the call. For his part, defendant repeatedly admitted to past drug use and being a bad father generally, but many of his answers were nonresponsive to the questions, and defendant at various points remained silent in response to W's questions. During the 42-minute call, defendant neither denied nor explicitly admitted that he had sexually abused W.

The day after the pretext call, a sheriff's detective, Wilkinson, contacted and interviewed defendant. When confronted with W's allegations, defendant denied ever having sexually abused her.

---

[1] Before trial, defendant moved to exclude the recording entirely or to exclude his own statements in the call that he was a bad father and a drug user, because the statements were relevant only for the impermissible purpose of proving that he had a generally bad character that made it more likely that he had sexually abused W and C. The trial court denied defendant's motion *in limine*.

Approximately two weeks later, the police contacted and interviewed C. C is the daughter of W's maternal grandmother but is close in age to W. In the course of investigating W's allegations, the police had learned that C had accused defendant in 1999 of sexually abusing her one night that year. After defendant separated from W's mother, and while the alleged sexual abuse of W was still ongoing, defendant stayed for a period of time with C and her mother when C was about nine years old. According to C's account of the incident, C's mother sent C to bed early, and defendant accompanied C up to her bedroom. C asked defendant to stay with her until she fell asleep. C woke up the next morning in her bed next to defendant. Defendant then began touching her buttocks and vagina. After a few seconds, C kneed defendant and told him to stop. C then ran downstairs and told her mother, who immediately kicked defendant out of the house. Neither C nor her mother reported the incident to police. After that, C never saw defendant again, save for one night, briefly, several years after the alleged abuse.

Defendant also denied sexually abusing C. According to defendant's testimony at trial, on the morning that C accused him of sexually abusing her, she had actually rolled over onto his arm, and he awoke with his arm pinned underneath her torso. He pulled his arm away and went back to sleep, only to be "awakened a little bit later when [C's mother] is telling me to get the hell out."

As noted above, defendant was ultimately charged with five counts of sodomy in the first degree, ORS 163.045, and one count of sexual abuse in the first degree, ORS 163.427, based on W's allegations, as well as an additional count of sexual abuse in the first degree based on C's allegations. Just before trial, defendant filed a motion to sever the lone count stemming from C's allegations.[2] In

---

[2] The indictment alleged that each count involved an act of the same or similar character as the other counts. *See* ORS 132.560(1)(b)(A) (providing that two or more offenses alleged to have been committed by the same person may be charged in the same charging instrument in a separate count for each offense if the offenses charged are of the same or similar character). Defendant has not argued that joinder was improper, only that the charges should have been severed.

defendant's seventh assignment of error, he contends that the trial court erred in denying his motion to sever. Because the issue affects any retrial of defendant, we address the assignment.

Defendant argued to the trial court that severance was warranted under ORS 132.560(3), which provides that, "[i]f it appears, upon motion, that the state or defendant is substantially prejudiced by a joinder of offenses * * *, the court may order an election or separate trials of counts," because he would be substantially prejudiced by joinder. Defendant first argued that he would be prejudiced because evidence regarding the separate victims would not be admissible in separate trials under OEC 404(3)[3] and OEC 403.[4] Further, defendant asserted, because the two victims were close in age at the time of the charged offenses and because of the prejudicial nature of child sexual abuse evidence, a jury hearing allegations from two victims would be highly likely to conclude that defendant had a propensity to commit sex crimes against minor females. Defendant also argued that the evidence regarding the victims was not "sufficiently simple and distinct to mitigate" the potential dangers that would result from erroneous joinder. *State v. Norkeveck*, 214 Or App 553, 560, 168 P3d 265 (2007), *rev den*, 344 Or 558 (2008). Defendant argued, lastly, that a joint trial would severely curtail his "fifth amendment privilege" by forcing him to choose between testifying with regard to both victims or neither of them. Defendant stated that he wished to preserve his right to testify regarding C's allegations while preserving his right to remain silent regarding W's allegations. In defendant's view, an instruction directing the jury to ignore his silence as to one victim

---

[3] OEC 404(3) provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

[4] OEC 403 provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence."

while he addressed the allegations of the other would put him in "the awkward position" of effectively having to comment on his own silence.

The state responded that the evidence as to both of the victims was sufficiently interrelated so as to require each victim's testimony at a trial for defendant's alleged conduct against the other victim. According to the state, the evidence would show that, while defendant was molesting W, he was grooming his second victim, C. The two victims later spoke with each other about the abuse, and W was eventually the one who first informed the police about defendant's alleged abuse of C. The state also contended that any harm to defendant resulting from defendant's having to elect whether to testify in a joined trial did not constitute substantial prejudice under ORS 132.560(3). The state pointed out that, if defendant could "craft his scope" of testimony so that he was "talking about one victim and not the other," then the state would be "limited to that" on cross-examination, which would be "curative of any * * * specialized prejudice that the Court may find."

The trial court denied defendant's motion to sever. The court agreed with the state that defendant could control the scope of his testimony, thereby limiting the scope of the state's questioning of defendant. On that note, the court instructed the prosecutor that, if defendant testified in direct examination as to one victim in a way that the state concluded enabled it to then cross-examine defendant regarding the other victim, the prosecutor was to consult the court before proceeding. The court also highlighted that the jury would hear the standard instruction about defendant's right to remain silent, and offered to modify that instruction, if requested by defendant, to clarify that defendant had an absolute right not to testify about the other case.

"We review a trial court's determination that a defendant failed to demonstrate the existence of substantial prejudice for errors of law based on 'the record at the time of the court's ruling on defendant's motion to sever.'" *State v. Gensler*, 266 Or App 1, 8, 337 P3d 890 (2014), *rev den*, 356 Or 690 (2015) (quoting *State v. Tidwell*, 259 Or App 152, 156,

313 P3d 345 (2013), *rev den*, 355 Or 142 (2014)). "Whether the joinder of charges substantially prejudiced a particular defendant involves a case-specific assessment of the charges and the facts alleged to support them." *Tidwell*, 259 Or App at 154. "The reviewing court must be able to determine from the record that the trial court engaged in the required prejudice analysis." *State v. Luers*, 211 Or App 34, 44, 153 P3d 688, *adh'd to as modified on recons*, 213 Or App 389, 160 P3d 1013 (2007). Applying those standards, we conclude that the trial court did not err.

Our decision in *Gensler* is dispositive. Like defendant here, the defendant in *Gensler* was convicted, in a single trial, of multiple counts of sodomy and sexual abuse for acts committed against one minor victim over a span of several years and separate acts committed against a second minor victim during a more limited time span. 266 Or App at 3. The trial court in *Gensler* denied the defendant's motion to sever, reasoning that, *inter alia*, the "defendant had not demonstrated substantial prejudice because the cases are separate enough that the jury could make a determination very easily on one case, and on the other case and not be confused by the conduct." *Id.* at 6 (internal quotation marks omitted). As we noted, the trial court "also explained that it could fashion limitations on cross-examination so that defendant could testify in the case pertaining to [victim 1] without having to testify in the case pertaining to [victim 2] and suggested that defendant could request instructions to guide the jury's consideration of the evidence." *Id.*

We affirmed, concluding that, "even if we assume that the evidence in each case was not mutually admissible in the other, the evidence in the cases was sufficiently simple and distinct to mitigate the dangers created by joinder." *Id.* at 9 (internal quotation marks omitted). In particular, we noted that the charges "arose from different incidents that occurred at different times and places and involved different victims." *Id.* We also concluded that any potential prejudice "could be mitigated through jury instructions and by limiting the state's cross-examination of defendant if he chose to testify in the case pertaining to [victim 1] but not the case pertaining to [victim 2]." *Id.* Here, for the same

reasons, we reject defendant's argument that the trial court erred in denying his motion to sever.[5]

## II.  MOTION FOR MISTRIAL

We turn next to defendant's fifth and sixth assignments of error, in which he contends that the trial court erred in denying his motion for mistrial, made after closing arguments on the basis that the prosecutor had improperly exploited evidence of defendant's past drug use throughout the course of the trial through comments during rebuttal argument to the jury. We begin by relating the remainder of the relevant facts.

The state called W as its first witness. Over defendant's objection based on OEC 404(3) and OEC 403, the court permitted the prosecutor to elicit general testimony from W that defendant had physically abused W—that he went "beyond normal discipline"—to establish that W had been afraid of defendant and to help to explain why W delayed reporting that defendant had sexually abused her. Although the prosecutor had told the jury in opening statement that the state would prove that defendant had been physically abusive to everyone in the household, W did not testify that defendant had beaten W's mother and neither did W's mother say so, when she later testified for the state. W also explained that she had heard from relatives that defendant was sober, which she considered when deciding whether to see him again. During redirect testimony, the state asked W, "By this point in your life, had you become aware—when we're talking, like, 19-, 20-, 21-year-old—that your dad had had a drug problem when he lived with you?" Defendant objected and requested a sidebar conference, following which the state withdrew the question. W finished testifying shortly thereafter, and the jury was excused for the day.

---

[5] On appeal, defendant also argues, for the first time, that the denial of his motion to sever denied him due process of law under the federal constitution. The state responds that defendant did not raise a due process argument below and that we should decline to address it. We agree with the state. *See State v. Hayes*, 186 Or App 49, 57, 61 P3d 960 (2003), *rev den*, 339 Or 230 (2005) (declining to reach the defendant's alternative federal constitutional basis for affirmance because, *inter alia*, the defendant did not raise and develop that argument in the trial court).

The court then asked the state whether and to what extent it intended to elicit any additional testimony regarding defendant's alleged drug use. The state responded that it would continue to put on such evidence, arguing that it was relevant. The state indicated that it intended to ask W's mother about defendant's "regular and persistent drug use" and, more specifically, whether she was aware that he was using drugs while she was in a relationship with him and what drugs he had used. The state explained that that testimony was pertinent to defendant's statements in the recorded pretext call, in response to W's allegations, that he was "on drugs." The state also argued that the evidence "impeaches both the Defendant's memory and also helps explain some of the motive, some of the reason for why the Defendant did what he did."

Defendant then renewed his objection on relevance grounds and for the second time moved for a mistrial, this time "on the question that was already asked in the presence of the jury"—defendant's "drug problem" when he lived with W—explaining, "I don't think a jury instruction can cure that problem." Defense counsel added, "I think that the State has mistakenly fallen into this hole of believing that now it's just a free-for-all and we can just talk about the Defendant's character all day long and say what a bad guy he is on so many different levels."

The state then added that the court had

"already ruled that it's coming in, the pretext phone call, and the jurors are going to hear the Defendant himself say that he was on drugs during this time, and to say that it's any more prejudicial that other people confirm and essentially say that this Defendant was telling the truth or is truthful when he says that is not prejudicial at all."

The state also asserted that it was "not trying to show he used drugs because he's a drug user and he's a bad person; we're showing that he used drugs, and that affects somebody's ability to remember when they're recalling events that happened ten—more than ten years ago."

The court ruled that, notwithstanding its earlier allowance of some reference to defendant's past drug use, *i.e.*, as acknowledged by defendant in the pretext call and

as relevant to W's decision to renew contact with defendant, any subsequent attempt by the state to elicit further evidence on that point was not relevant and would be unfairly prejudicial. The court then concluded:

> "I certainly would not permit Counsel to argue to a jury that because—if they were to believe that the Defendant was on drugs, therefore they should draw the inference that he was more likely to molest children because of lowered inhibitions. That would be completely inappropriate. And I don't see any other purpose that the State is offering it for but to paint the Defendant in a bad light in front of this jury."

The court did not grant defendant's motion for a mistrial.

Despite the court's cautionary statement to counsel, other evidence of defendant's past drug use was elicited on the second day of trial. The state called W's mother as a witness, and, on cross-examination by defendant, W's mother denied using drugs with defendant. On redirect, the state capitalized on that questioning and elicited further testimony of defendant's drug use, to which defendant did not object:

> "[PROSECUTOR:]   Was the Defendant using drugs?
>
> "[W'S MOTHER:]   Yes, there was.
>
> "Q.   What drugs was he using?
>
> "A.   Methamphetamine.
>
> "Q.   Anything else?
>
> "A.   Marijuana, alcohol.
>
> "Q.   Was that regular and—
>
> "A.   Yes—
>
> "Q.   —frequent?
>
> "A.   —it was very regular.
>
> "Q.   What does very regular mean to you?
>
> "A.   The methamphetamine was, I believe, a daily use.
>
> "Q.   And did that cause changes in his mood, changes in his behavior?

"A.  Yes, it did.

"Q.  Now, here's a tough question for you * * *. If you knew that your boyfriend was using methamphetamine for a really long time every day, why would you let him watch your kids?

"A.  He was their father."

The state also called Helbling, the deputy who had conducted and recorded the pretext phone call between W and defendant. Over defendant's renewed objection to admission of the recording, the state introduced and the court admitted it as an exhibit. The state then played the recording for the jury in its entirety.

The state then called Wilkinson, the detective who had interviewed defendant the day after W's mother alerted the police to W's allegations. The state asked Wilkinson, "Did he talk about using drugs?" Defendant did not object. Wilkinson responded that defendant had told him that, "in the past when he was younger that he had a drug issue and that he didn't make good decisions back then to have a close family life with them because of this drug use, faulting his parenting because of the—the drug use."

Subsequently, outside the presence of the jury, defendant reiterated his objection to the admission of the recording, which, again, contained his admission of drug use: "But just for the purpose of the record now that the Court has time to have heard the recording, I'd move for the motion *in limine* on the same grounds as asserted before, ask to have that excluded and stricken from the record." The court adhered to its earlier ruling and denied the motion.

Defendant later took the stand to testify regarding C's allegations. During cross-examination, the state began questioning defendant regarding his drug and alcohol use at the time of the incident. Defendant testified that he had "used drugs pretty frequently," including methamphetamine and marijuana, but not usually alcohol. The state asked defendant whether he was sober on the night that he allegedly abused C, and defendant responded that he was. But defendant objected on the basis of relevance when the state asked, "Do you think the years of drug use * * * have

affected your ability to remember this event?" The court overruled the objection, and the state restated its question: "You don't think all the drugs you used or alcohol you used have affected your ability to remember or perceive any of the events that * * * you've testified to?" Defendant responded, "Correct."

Following defendant's testimony, the parties offered their closing arguments. In defendant's closing argument, defense counsel attempted to defuse, as he characterized it, the prosecution's "character case." In part, he explained to the jury:

> "I had objected, because I did not want to make this trial about [defendant's] character, to the introduction of evidence of his drug use, but you heard it. And you heard it referred to in the phone call; you heard it referred to on the stand by several different witnesses."

He argued that there was reasonable doubt and that, although the state had painted defendant as "a real jerk," whether defendant was a jerk was not an issue for the jury to decide.

During the state's rebuttal, defendant objected to the prosecutor's argument:

> "[PROSECUTOR:]   And for Counsel to say, 'Yeah, my guy is a drug dealer; yeah, my guy is a wife beater; yeah, my guy is just a bad guy and he's a jerk, but you should believe he wouldn't sexually abuse his daughter,' that doesn't really make sense. He's kind of the exact guy you would expect to abuse his daughter. Exactly the guy you would expect to be—
>
> "[DEFENSE COUNSEL]:   Objection, Your Honor.
>
> "THE COURT:   Sustained. The jury will disregard that last statement."

The prosecutor then went on to reference defendant's drug use again when he argued that defendant had exploited opportunities he had found because the victims' mothers were not engaged in protective parenting. He argued with respect to W's case that it was not good parenting to leave a child "every night with somebody who uses methamphetamine" and, with respect to C's case, that "to allow a man who's a

known drug user to stay in your house with your daughter and constantly let your daughter go with that person *** does not suggest the sort of protective parenting that's going to keep kids safe." The prosecutor concluded on that topic, "It's really more proof that this actually happened."

After the court instructed the jury and the jury left the courtroom for deliberation, defendant moved for a mistrial based on the prosecutor's comment in rebuttal to which defendant had objected. Defendant argued that the prosecutor's comment indicated that "all the character evidence that was previously represented by the State not to be character evidence brought it full-circle and crystallized all those things, and now it's clearly propensity evidence." Defendant did not argue that the prosecutor had referred to matters not in evidence, that is, that there was no evidence that defendant was a drug dealer or a wife beater. The prosecutor responded that the court's ruling sustaining defendant's objection was curative. The prosecutor also argued that defendant, through his own closing argument, "made my argument for me to the jury, so I don't see how it would be causing any prejudice whatsoever."

The court concluded that the prosecutor's comment was "completely inappropriate." Addressing the prosecutor, the court stated:

> "You told this jury that they were entitled to and could infer from the fact that Defendant used drugs or engaged in other conduct that he was a child molester. And you know as well as all of us know that the rules of evidence specifically prohibit that. And I can only think that you got carried away in some kind of enthusiasm where you lost all of your training and experience.
>
> "I am not inclined to grant a mistrial based on that comment. An objection was immediately sustained. The jury was immediately instructed to disregard it. I believe the jury has gotten appropriate instructions about what evidence they can and cannot rely on."

Although the court denied the motion for a mistrial, the court offered to provide the jury with an additional, written curative instruction, to which the parties agreed. That instruction read, "You may not use evidence of character

traits of the Defendant unrelated to the crimes charged to infer the guilt of the Defendant."

On appeal, defendant contends that the court should have instead granted his motion for a mistrial based on the prosecutor's comment in closing that, as a "drug dealer" and a "wife beater," defendant was "kind of the exact guy you would expect to abuse his daughter." Defendant contends that the prosecutor improperly argued that defendant's methamphetamine use made him the kind of person who would sexually abuse children and improperly inserted inflammatory facts not in evidence, both of which made it apparent that the curative instruction was insufficient to cure the prejudice to defendant's ability to obtain a fair adjudication of the facts.

The state initially responds that we should not consider that contention because defendant's motion for a mistrial was untimely. Specifically, the state argues that, because defendant did not move for a mistrial until after the prosecutor had completed closing argument and the court had instructed the jury, the motion was untimely and, thus, unpreserved, citing *State v. Larson*, 325 Or 15, 933 P2d 958 (1997); *State v. Walton*, 311 Or 223, 809 P2d 81 (1991); and *State v. Hilton*, 187 Or App 666, 676, 69 P3d 779 (2003), *rev den*, 336 Or 377 (2004). Defendant contends that his motion for a mistrial was timely and sufficiently preserved, noting that the trial court had ruled on it and decided to give a final cautionary jury instruction as a result of the motion; that the court and the state were "abundantly aware" of defendant's objections, with the legal issues concerning unfair propensity evidence having been argued earlier during trial; that the court had sustained previous defense objections to evidence of defendant's drug use; and that defendant had already, albeit unsuccessfully, moved for a mistrial on "the same essential issues." We conclude that defendant sufficiently preserved his contention for appeal.

"To preserve error, a motion for mistrial must be timely." *Hilton*, 187 Or App at 676. "The time to move for a mistrial is when the allegedly prejudicial act occurs, not after the incident has been allowed to pass by, for then it is too late for the trial judge to caution the jury and mend the

harm." *State v. Shafer*, 222 Or 230, 235, 351 P2d 941 (1960); *see also Walton*, 311 Or at 248 (stating that a motion for a mistrial "is timely if it is made when the allegedly objectionable statements were made"). As we have explained, the court's iteration in *Shafer* of the timeliness rule clarifies that "[t]he purpose behind requiring an immediate mistrial motion is to allow the court to take prompt curative action if the court believes it is warranted." *State v. Veatch*, 223 Or App 444, 453, 196 P3d 45 (2008) (citing *Shafer*, 222 Or at 235). We have thus held that a defendant's motion was timely, even if not instantaneously made, when made under such circumstances that "the underlying purpose of that preservation requirement is fulfilled." *Veatch*, 223 Or App at 453-54; *see also Larson*, 325 Or at 21-22 (concluding that the defendant's motion for a mistrial, based on an improper comment by the prosecutor, was timely even though it was not made immediately following that comment, given no "significant lapse of time, no additional testimony, no recess, and no discussion of another issue").

We conclude that, as in *Veatch*, the underlying purposes of the preservation requirement were fulfilled. In *Veatch*, the defendant appealed his conviction for driving under the influence of intoxicants, arguing, *inter alia*, that the trial court erred when it denied his motion for a mistrial made after the arresting officer testified that the defendant had asked to speak with his attorney before deciding whether to submit to a breath test. 223 Or App at 446. The defendant's call was unsuccessful, as was his earlier phone call to his attorney, immediately after being arrested. The trial court had ruled pretrial that "there could be no mention of telephone calls unless the defense opened the door to such evidence and that, even then, '[w]e don't need to know who it was to * * *.'" *Id.* at 448 (brackets and ellipses in *Veatch*).

The defendant in *Veatch* first moved for a mistrial after the prosecutor, in opening argument, told the jury of the first attempted call. The court denied the motion. *Id.* Later, on the state's direct examination, the arresting officer, Berry, testified that "[the defendant] wanted to call his lawyer before" deciding whether to submit to the breath test. *Id.* at 448. The following colloquy ensued:

"'[DEFENSE COUNSEL]:    Objection. I have a matter for the court.

"'THE COURT:    Sustained. And if I hear that word again—

"'[PROSECUTOR]:    Yeah.

"'THE COURT:    —you're going to start all over again.'"

*Id.* at 448-49. Following that exchange, Berry completed testifying, the state rested its case, and the jury was excused for lunch. The defendant then moved for a mistrial based on Berry's reference to the defendant's attempt to call his attorney. The court denied the motion. *Id.* at 449.

On appeal, the state argued that the claim of error regarding the motion was unpreserved because the motion was not made immediately following Berry's objectionable comment. *Id.* at 452. We disagreed. We noted that the trial court, in response to the defendant's objection,

> "took the actions that it believed to be appropriate in response to the offending testimony: It warned the prosecutor of the possibility of a mistrial and gave the jury a curative instruction. Had defense counsel expressly moved for a mistrial at the outset, rather than signaling his intent by merely saying, 'I have a matter for the court,' there is no reason to believe that the court's response would have been any different."

*Id.* at 453. We then reasoned that,

> "[u]nder the circumstances of this case, * * * [w]here it is clear that the trial court understands that the defendant intends to seek a mistrial, and it responds by giving a curative instruction, the need for an *immediate* mistrial motion is obviated. Again, the point of requiring that the motion be made immediately is to allow the court to take prompt curative action * * *."

*Id.* at 453-54 (emphasis in original).

Here, by the time that defendant objected to the prosecutor's comment in rebuttal argument that, as a "drug dealer" and a "wife beater," defendant was "kind of the exact guy you would expect to abuse his daughter," both the state and the trial court were well aware that defendant viewed

that comment as part of a series of similar references by the state to other bad acts, such as his past drug use, which the state adduced for the impermissible purpose of indirectly proving defendant's propensity for sexual abuse. Not only had defendant addressed the issue in closing, he also had attempted to preempt such arguments at trial through his motion *in limine* to exclude all or portions of the recorded pretext call, in which he contended that his statements that he was a bad father and a drug user were introduced to prove that he had a generally bad character that made it more likely that he had sexually abused W and C.

Moreover, on the first day of trial, the trial court had warned the prosecutor about eliciting evidence of defendant's drug use and presenting improper arguments based on it. The trial court told the prosecutor that,

"to just have the victim's mother and the Defendant's ex-partner get up and say he was, you know, a no-good meth-using bum, I think is way more prejudicial than probative, and I'm not going to allow it. And if I were to allow it and you were to get a conviction, I would just about guarantee that we'd be back trying this case over again * * *."

As noted above, the court also told the prosecutor that it "certainly would not permit Counsel to argue to a jury that because—if they were to believe that the Defendant was on drugs, therefore they should draw the inference that he was more likely to molest children because of lowered inhibitions."

Yet, as in *Veatch*, the prosecutor in this case invited the jury to conclude that, because defendant was a "drug dealer"—presumably, the prosecutor meant to say "drug user"—and "wife beater," he was the kind of man who would molest his daughter—precisely the kind of comment that the trial court had earlier forbidden and about which it had warned the state. And, as in *Veatch*, defendant immediately objected to the improper comment, and the trial court issued a terse curative instruction. Defendant then moved for mistrial for a third time, after the state had completed its closing argument and the jury had left the courtroom after being instructed. The trial court both ruled on the motion and determined that it would give the jury a final

curative instruction. Given defendant's earlier objections, his first motion for a mistrial because of the state's injection of prior misconduct, namely physical abuse of W, into the trial, his second motion for a mistrial directed to the state's repeated reference to defendant's drug use and potential employment of that fact as character evidence, and the trial court's responses to them, it was not unreasonable for defendant to make his motion at that point. Both the court and the state were acutely aware of defendant's concern that the state had painted defendant as a methamphetamine addict who would sexually abuse children. We note that the state did not object at trial to defendant's motion for a mistrial as untimely.

We also conclude that the timing of defendant's motion comported with the principles pertaining to preservation requirements more generally. *See State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000) (summarizing the purpose of requiring preservation of an issue for appeal). Defendant's position was clear, and the state had ample opportunity to respond to that position. *See State v. Brown*, 310 Or 347, 356, 800 P2d 259 (1990) (reasons for rule are to allow adversary to present its position and to permit trial court to understand and correct any error); *see also Shields v. Campbell*, 277 Or 71, 77-78, 559 P2d 1275 (1977) ("The reason for such a rule is not merely to promote form over substance but to promote an efficient administration of justice and the saving of judicial time."). Nor is there any evidence, and the state does not argue on appeal, that defendant made a strategic choice in moving for a mistrial when he did. *See Denham et ux. v. Cuddeback*, 210 Or 485, 493, 311 P2d 1014 (1957) (stating that a related purpose of the requirement to object during trial to any matter regarded as prejudicial is to prevent litigants from speculating on a verdict and then seeking a new trial if the verdict is against them); *cf. State v. Barone*, 329 Or 210, 241-42, 986 P2d 5 (1999), *cert den*, 528 US 1086 (2000) (holding that the defendant's motion for a mistrial, on the ground that the prosecutor had belittled defense counsel in rebuttal argument, was untimely and not preserved when it was made during the court's recess for jury deliberation, when or just before the jury had returned its verdict); *State v. Wilson*, 121 Or App 460, 469-71, 855

P2d 657, *rev den*, 310 Or 61 (1993) (affirming the denial of the defendant's motion for a mistrial on the basis of the prosecutor's suggestion during rebuttal argument that the state had evidence of the defendant's prior bad acts, when the defendant made the motion after the jury had returned its verdict). In short, we conclude here, as we did in *Veatch*, that, under the circumstances, the underlying purpose of the preservation requirement was satisfied and that defendant's motion for a mistrial was sufficiently immediate.

Because defendant's motion was timely and preserved, we turn now to its merits. We review the trial court's denial of the motion for a mistrial for an abuse of discretion. *Larson*, 325 Or at 22; *State v. Middleton*, 256 Or App 173, 178, 300 P3d 228, *rev den*, 354 Or 62 (2013). A trial court abuses its discretion in denying a motion for a mistrial if the effect is to deny the defendant a fair trial. *Middleton*, 256 Or App at 178. "Generally, a proper jury instruction is sufficient to protect the defendant against any prejudice." *Id.*; *accord State v. Osorno*, 264 Or App 742, 749-50, 333 P3d 1163 (2014). That being said, some statements are so prejudicial that, as a practical matter, an instruction cannot remedy the prejudice. *Middleton*, 256 Or App at 178 (citing *State v. Jones*, 279 Or 55, 62, 566 P2d 867 (1977)). Furthermore, if it is likely that the jury drew an adverse inference, we cannot assume that the jury was able to follow an insufficient curative instruction, *e.g.*, one that "merely told it to disregard the improper statement." *Veatch*, 223 Or App at 458 (citing *State v. White*, 303 Or 333, 342-44, 736 P2d 552 (1987)). "Therefore, the questions to be addressed here are the nature of the prejudice, if any, caused by the statements and whether the trial court's instructions were sufficient to cure it." *Middleton*, 256 Or App at 178.

We first conclude that the prosecutor gave a closing argument that was likely to have an unfairly prejudicial effect on defendant. The prosecutor in rebuttal closing made the kind of comment specifically forbidden by the trial court in this case earlier in the proceedings. The prosecutor invited the jury in rebuttal to find defendant guilty of sexual abuse because of his character as a "drug dealer," or drug user, and "wife beater." And, as defendant argued, that

comment indicated that "all the character evidence that was previously represented by the State not to be character evidence brought it full-circle and crystallized all those things, and now it's clearly propensity evidence."

Additionally, in his objectionable statement in rebuttal, the prosecutor relied on inflammatory facts not in evidence. As defendant points out, there was no evidence that defendant was a drug dealer or that he had beaten W's mother.

Then, following the trial court's *second* express censure of the state's attempt to elicit and exploit improper propensity evidence, when the court sustained defendant's objection and told the jury to disregard the comment that defendant, as a "drug dealer" and "wife beater," was "the exact guy you would expect to abuse his daughter," the prosecutor twice more referred to defendant's drug use and suggested that it was evidence of his predilection for sexually abusing minor children. Specifically, the prosecutor argued that it was bad parenting by W's and C's mothers to have let their girls have contact with "somebody who uses methamphetamine" and who is "a known drug user" and that "[i]t's really more proof that this actually happened."

In denying defendant's motion, the trial court concluded that, in making the improper comment in closing, the prosecutor "got carried away in some kind of enthusiasm where you lost all of your training and experience." Although the trial court apparently concluded that the prosecutor's conduct was not willful, the argument remains improper. *See Osorno*, 264 Or App at 751-52 (observing that the trial court's view that the prosecutor inadvertently alluded to the defendant's desire not to say anything incriminating was not relevant to whether the conduct affected the defendant's right to a fair trial).

Despite the trial court's admonition, the prosecutor repeatedly referred to defendant's past drug use throughout the trial and then, in rebuttal argument, both implicitly and expressly urged jurors to infer defendant's guilt as a result. The prosecutor's comments were "not subtle, isolated, or fleeting." *State v. Reineke*, 266 Or App 299, 311, 337 P3d 941 (2014) (concluding that repeated improper references by

prosecutor in closing argument made it "highly likely that the jury drew an adverse inference" that defendant was guilty); *see also Jones*, 279 Or at 63 (concluding that, "[i]n a prosecution for rape, in which * * * the jury must decide between the credibility of the prosecuting witness and the defendant," where the prosecutor "persisted in making comments and insinuations" about the defendant's past uncharged alleged misconduct, including a "clearly improper attempt to get before the jury" such evidence, "the prejudice resulting from the admission of such evidence was so pervasive as to lead us to the conclusion that, as a result, defendant was denied a fair trial"); *State v. Woodall*, 259 Or App 67, 74, 313 P3d 298 (2013), *rev den*, 354 Or 735 (2014) ("Although defendant correctly assigns error separately to each of the denials of his motions for mistrial, * * * we treat the assignments as a single, cumulative argument, because together they raise a single question: Did the repeated references to defendant's status as a sex offender deprive him of a fair trial?").

The dispositive question is, therefore, "whether the purportedly curative instruction was sufficient to unring the bell." *Osorno*, 264 Or App at 750. We conclude that the trial court's two curative instructions in the wake of the prosecutor's impermissible comment in rebuttal argument here were insufficient. As noted, immediately after the trial court sustained defendant's objection to the prosecutor's argument, the trial court told the jury simply to "disregard that last statement." The Supreme Court has rejected that type of instruction as insufficient. *See, e.g., White*, 303 Or at 343-44 (reversing and remanding for new trial where the purportedly curative instruction "did no more than tell the jury that defendant's refusal to testify * * * was irrelevant"); *Jones*, 279 Or at 62-63 (reversing and remanding for new trial where trial court sustained defendant's objection to improper comment and instructed the jury to "disregard the statement made by the last witness" and to "erase it from your mind and pay no attention to it").

Then, following discussion of defendant's motion for a mistrial, the court further instructed the jury that it could not use "evidence of character traits of the Defendant unrelated to the crimes charged to infer the guilt of the Defendant." Although that additional instruction referred

to "character traits" that were "unrelated" to the charged crimes, those traits were not identified. As a result, the jury was permitted to conclude that some, or maybe all, of the character traits that the state considered to be relevant to the charged crimes—including defendant's status as a methamphetamine abuser—were, in fact, related and appropriate for consideration. The additional instruction, therefore, did not negate the inference that the state asked the jury to draw and was insufficient to cure the prejudice to defendant. *See Veatch*, 223 Or App at 460-61 (holding that the trial court's instruction that "a person has a right to call their lawyer and you're not supposed to make any inferences from that, since they have a right to do it" did not "unring the bell," that is, did "not negate the inference" that a person arrested for driving under the influence would not ask for an attorney unless concerned about failing a breath test).[6]

In short, because the state's rebuttal argument was prejudicial to the defense and the trial court's instruction was insufficient to cure that prejudice, the trial court abused its discretion in denying defendant's motion for a mistrial.

Reversed and remanded.

---

[6] Although defendant did not object to the sufficiency of the curative instruction, "any error in denying a preserved mistrial motion remains preserved regardless of whether the defendant objected to the sufficiency of the instruction." *Veatch*, 223 Or App at 455.