Argued and submitted September 30, 2011, conviction on Count I in Case No. 0900084CR reversed and remanded; otherwise affirmed February 15, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CHRISTOPHER RAY DIMMICK,
*Defendant-Appellant.*

Wasco County Circuit Court
0800248CR, 0900084CR;
A143190 (Control), A143666

273 P3d 212

Neil F. Byl, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Matthew J. Lysne, Assistant Attorney-in-Charge, Criminal Appeals, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

Defendant appeals convictions of four counts of unlawful delivery of methamphetamine, ORS 475.890, and three counts of unlawful possession of methamphetamine, ORS 475.894. He argues that the trial court erred in failing to suppress a backpack and its contents, which he alleges were unlawfully seized during a traffic stop. According to defendant, although police had authority to tow his car after discovering he had an expired insurance card, and therefore also had authority to conduct an inventory, the inventory did not permit them to prevent him from taking the backpack out of the car and carrying it away. He also argues that the trial court erred in denying his motion to sever charges arising from stops that occurred in October and November 2008 and in granting the state's motion to consolidate the 2008 charges with other charges arising from incidents in February and March 2009. We agree with defendant that the backpack and the evidence found therein should have been suppressed and that one of the convictions for delivery of methamphetamine—the only conviction to which the backpack relates—must be reversed and remanded. Otherwise, we affirm.

We state the facts consistently with the trial court's findings, which are supported by evidence in the record. *State v. Hall*, 339 Or 7, 10, 115 P3d 908 (2005). On October 29, 2008, Officer Lundry lawfully stopped the car defendant was driving in The Dalles. When asked to show proof of insurance, defendant produced an expired insurance card and told Lundry that he had borrowed the vehicle from a friend. Lundry confirmed that the insurance had expired and called dispatch to send a tow truck to impound the vehicle pursuant to the city impound ordinance. Lundry then asked defendant if there were any drugs, weapons, or illegal contraband in the vehicle and, when defendant said that there were not, asked if he could search it. Defendant said that he could not. Lundry then advised defendant that he was impounding the vehicle and that he would be performing an inventory search of its contents; he asked defendant if there were any valuables in the car. Defendant responded that he "didn't really know what was in the car," and refused to answer any more questions. Lundry gave defendant a written citation and told him he was free to leave.

As he was getting out of the vehicle, defendant picked up a backpack from the backseat. Lundry asked him who the backpack belonged to. Defendant said, "It's my friend's." Lundry told defendant, "You're going to have to leave it then," because the vehicle would be inventoried pursuant to the impoundment. Defendant then said that the backpack was his. Lundry asked if he could open the backpack and look for identification to make sure that it belonged to defendant. Defendant sighed, dropped the backpack, and walked away. Lundry picked up the backpack, put it in his patrol car, and performed an inventory search of the vehicle. He found a digital scale and six small plastic baggies in the center console. The scale tested positive for cocaine residue, and the police forensic laboratory also identified traces of methamphetamine, but not a reportable amount.

Lundry subsequently obtained a search warrant for the backpack and searched it a few days later. Inside, he found seven glass methamphetamine pipes and a small plastic baggie containing white residue. Although the baggie field-tested positive for amphetamines, no controlled substances were found on it. Defendant was subsequently charged in Wasco County with unlawful possession of methamphetamine. Defendant moved to suppress the backpack and its contents. In opposition to the motion, the state argued that the seizure of the backpack was lawful because anything in a car that is being impounded is subject to seizure under the city's inventory policy. The trial court denied defendant's motion.

In the meantime, on November 18, 2008, defendant was stopped again while driving the same vehicle when police arrested defendant's passenger on a warrant. A search of the vehicle revealed a digital scale in the backseat, a methamphetamine pipe in the gear shift cover, and 11 baggies of methamphetamine in a locked magnetized box secured underneath the car. As a result, defendant was charged with unlawful delivery of methamphetamine and unlawful possession of methamphetamine.[1] These charges were set to be

---

[1] Defendant also moved to suppress evidence found during the November 18, 2008, stop, which the trial court denied. Defendant does not assign error to that ruling.

tried together with the case arising from the stop on October 29, 2008, described above.

Defendant moved to sever the cases, arguing that evidence in one case would serve as impermissible character evidence in the other, and that he therefore would be prejudiced if the cases were tried together. The trial court denied defendant's motion, stating, "I think that based on what's been represented to me to be the evidence during this hearing, and also by reference to the motion to suppress, that the evidence is sufficiently simple and distinct to mitigate the dangers created by joinder. So the motion to sever is denied."

Before defendant was tried on any of those charges, he was arrested again when he allegedly sold methamphetamine to an informant on February 15, 2009, and on March 15, 2009. He was charged with three counts each of unlawful delivery of methamphetamine and unlawful possession of methamphetamine, including a set of charges arising from the October 29, 2008, incident that were reindicted.[2] The state then moved to consolidate the newly indicted case (based on the October 2008, February 2009, and March 2009 incidents) with the case involving the November 18, 2008, stop. Defendant opposed the motion to consolidate, renewing his prior argument that trying the cases together would be prejudicial because evidence of the controlled buys cases would be used by the prosecution to create impermissible character-based inferences about defendant's intent regarding the other charges. The court ruled in favor of the state. Defendant was tried before a jury and convicted of four counts of unlawful delivery and three counts of unlawful possession. Defendant now appeals.

Our review of the trial court's denial of defendant's pretrial suppression motion is limited to issues of law. *Hall*, 339 Or at 10. On appeal, defendant argues that the backpack was unlawfully seized because this court held in *State v. Sparks*, 228 Or App 163, 167, 206 P3d 1197 (2009), that the inventory exception to the warrant requirement alone cannot

---

[2] Defendant was reindicted with charges for unlawful delivery and possession of methamphetamine arising from the October 29, 2008, stop, and the original indictment (charge for possession only) was subsequently dismissed. The state apparently later dismissed the reindicted possession charge (Count II) before trial.

justify the seizure and search of portable closed containers that an occupant carries out of a vehicle on his own person.

In response, the state first argues that the officer could seize the backpack despite defendant's desire to take it out of the vehicle because, once Lundry had given defendant notice that the vehicle was going to be impounded, the impounding authorities had the exclusive right to possess the vehicle, and that right encompassed the right to possess the vehicle's contents. In support of that argument, the state relies on ORS 809.720(1), which provides:

> "A police officer who has probable cause to believe that a person, at or just prior to the time the police officer stops the person, has committed an offense described in this subsection may, without prior notice, order the vehicle impounded until *a person with right to possession of the vehicle* complies with the conditions for release or the vehicle is ordered released by a hearings officer. This subsection applies to the following offenses:
>
> "* * * * *
>
> "(d)   Driving uninsured in violation of ORS 806.010."

(Emphasis added.) Suffice it to say that we see nothing in this statute that confers exclusive possession of the vehicle on the impounding authority. Indeed, the italicized language establishes the contrary proposition. And even if notice of impoundment conferred all possessory interests in the vehicle on the impounders, the state's argument that, as a necessary corollary, the impounders also have a possessory interest in the contents of the vehicle superior to the vehicle's driver or owner cannot be sustained. That argument relies on ORS 809.720(6), dealing with a towing company's right to foreclose a lien, and ORS 809.720(2), which deals with how police must provide notice of impoundment. Neither statute is relevant to the question of possessory interests in the contents of an impounded vehicle, not to mention a vehicle that has not yet been impounded but is about to be.

The state also argues that *Sparks* does not apply to this case because the officer did not search the backpack pursuant to an inventory policy; rather, he searched the backpack pursuant to a search warrant. We reject that argument.

The first step in that rejection is our conclusion that the back-pack was never lawfully seized pursuant to an inventory pol-icy. In *Sparks*, we held that an officer's inventory search of the defendant's purse when it was outside the vehicle, on the defendant's person, was beyond the authority established by the city's impound and inventory policy and was therefore invalid. 228 Or App at 167. The defendant was a passenger in a vehicle that was stopped; the officer decided to impound the vehicle when he discovered that the driver had a suspended license. *Id.* at 165. The officer asked the defendant to step out of the vehicle, and she did so, taking her purse with her. *Id.* The officer asked for permission to search her purse, which she declined, and he then told her that he had to search it as part of the inventory of the automobile. *Id.* She still refused, and he took the purse and searched it anyway, on the ground that the inventory policy required him to search everything that was in the vehicle at the time that it was stopped. *Id.* We held that the search was unlawful because the inventory pol-icy required that "[a]n inventory * * * be made of the interior of the [impounded] vehicle," and the officer searched the defendant's purse when it was not in the "interior of the vehi-cle." *Id.* at 167. Further, we stated:

> "[E]ven if the policy could been construed to encompass a search of all containers that were in the interior of the vehicle when it was stopped, including portable closed con-tainers that an occupant carries out of the vehicle on his or her person, the policy itself would violate Article I, section 9, of the Oregon Constitution. The vehicle inventory excep-tion to the warrant requirement serves three purposes: to protect the vehicle owner's property while the vehicle is in police custody; to reduce the likelihood of false theft claims against the police; and, 'in the occasional case,' to protect police and others from danger, if there is a 'concrete basis in specific circumstances' to believe that danger exists, such as, for example, an explosive in the car. [*State v.*] *Atkinson*, 298 Or [1, 7-8, 688 P2d 832 (1984).] 'The scope of the inven-tory must be limited to that—an inventory.' *Id.* at 10. 'Inventorying' the contents of a purse that a vehicle's occu-pant removes from the vehicle serves none of the purposes justifying the exception to the warrant requirement—indeed, the purposes would be served by *encouraging* occu-pants to remove small containers—and no policy purport-ing to authorize such action is valid."

*Sparks*, 228 Or App at 167 (emphasis in original; footnote omitted).

In this case, The Dalles General Ordinance No. 03-1247, Section 1, authorizes police to order a vehicle towed and impounded whenever a traffic citation is issued and a driver is cited for driving while uninsured in violation of ORS 806.010.[3] General Ordinance No. 06-1271, in turn, authorizes officers to conduct inventories of the contents of impounded vehicles under the guidelines set forth in the The Dalles Police Procedure Manual, which provide, in part:

> "Every vehicle towed shall be inventoried. * * * All valuables in the vehicle shall be completely inventoried with a description of the valuables and an indication of the quantity of the valuables. * * * The inventory shall be conducted as soon as practical and shall include the entire passenger compartment, uncovered hatchback, unlocked glove boxes, and unlocked trunk. The inventories of locked glove boxes and covered/locked hatchbacks shall be conducted if keys are available or no unlocking mechanisms are provided within the vehicle. The inventory is not a search for evidence. Items should be scrutinized to the extent necessary to complete the inventory. If, during the inventory, an officer locates a closed and locked container which the officer has probable cause to believe contains evidence or contraband, the officer shall seize the container, but should not open or search the closed and locked container for evidence without first obtaining a search warrant, or the owner's consent. Closed containers that are likely to contain valuables should be opened and their contents inventoried. Examples of types of containers that are likely to contain valuables are: strong boxes, wallets, purses, credit card holders, checkbooks, and briefcases. A property receipt for all items seized must be completed. Contraband located during the inventory is retained as evidence and forwarded to the property control officer."

Here, the city's impoundment ordinance authorized Lundry to seize the vehicle defendant was driving. However, the impoundment policy does not address Lundry's authority to seize portable closed containers located within the vehicle

---

[3] In addition, ORS 809.720(1)(d) authorizes police to impound a vehicle for the violation of driving uninsured.

at the time it was stopped. Nor does the policy specify that items present in the vehicle at the time it was stopped must be inventoried. Rather, Lundry was left to exercise his discretion to determine whether the backpack should have been seized as part of the impoundment of the vehicle. Yet, an essential purpose of the limitation on police inventories is to require the police to conduct the inventory "pursuant to a properly authorized administrative program, designed and systematically administered so that the inventory involves no exercise of discretion by the law enforcement person directing or taking the inventory." *Atkinson*, 298 Or at 10. Because Lundry's seizure of the backpack was an exercise of discretion to deviate from the express authority granted by the city's impound and inventory ordinances, the seizure of the backpack was invalid.

Further, as we stated in *Sparks*, "inventorying" the contents of a closed container that a vehicle's occupant removes from a vehicle serves none of the purposes justifying the inventory exception to the warrant requirement. Rather, the purposes put forward to justify that policy—protecting the vehicle owner's property while the vehicle is in police custody, reducing the likelihood of false theft claims against the police, and "in the occasional case," protecting the police and others from danger if there is a "concrete basis in specific circumstances" to believe that danger exists—would be served by *encouraging* occupants to remove small containers. *Sparks*, 228 Or App at 167 (quoting *Atkinson*, 298 Or at 7-8) (emphasis in original).

For those reasons, the seizure of the backpack was not justified by the impoundment of defendant's vehicle. Nor did the state provide any other lawful basis for the seizure and consequent search.

The state, as noted above, contends that the backpack was not searched pursuant to an inventory policy, but pursuant to warrant—that is, that the search warrant rendered the prior illegal seizure so attenuated from the discovery of evidence that no suppression was necessary. *Hall*, 339 Or at 25. We disagree. If a defendant meets the burden of establishing a "factual nexus" between the unlawful police

conduct and the challenged evidence, then the burden of persuasion shifts to the state to prove that the evidence was not tainted by the unlawful conduct. *Id.*; *accord State v. Johnson*, 335 Or 511, 520-21, 73 P3d 282 (2003).

Here, there is a factual nexus between the unlawful seizure and the subsequent search warrant. The backpack would not have been in the police's possession but for the unlawful seizure. Further, Lundry's statement that he patted down the exterior of the backpack and felt objects that he believed to be glass methamphetamine pipes would not have supported the affidavit for the warrant but for the unlawful seizure. Therefore, the burden shifted to the state to show that the evidence was not tainted, and the state failed to meet its burden because it did not argue that it would have been able to obtain a warrant or search the backpack had it not already been in the state's possession. Thus, the trial court erred in admitting evidence of the backpack at trial.

Evidentiary error does not require reversal unless it is prejudicial. OEC 103(1). We will therefore affirm a conviction despite evidentiary error if there is "little likelihood that the particular error affected the verdict[.]" *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). In making that determination, we consider the possible influence of the error on the verdict that the jury rendered. *Id.* Defendant argues that the admission of the backpack likely affected the verdict on his conviction for delivery of methamphetamine, Count I, arising from the October 2008 stop; he does not argue that the erroneous admission of the backpack and its contents prejudiced him with respect to any of his other convictions. According to defendant, the other evidence of the presence of methamphetamine discovered in the car that defendant was driving at the time of the October 2008 stop was weak; the backpack and its contents were therefore a critical piece of the state's case as to the delivery charge. Apart from the evidence of the backpack and its contents, the evidence admitted at trial relevant to defendant's charge for unlawful delivery of methamphetamine arising from the October 2008 stop consisted of six baggies and a digital scale found in the center console of the car defendant was driving. Although the scale tested positive for cocaine, no reportable amount of methamphetamine

was found. We therefore agree with defendant that the backpack and its contents provided necessary corroborative evidence of defendant's intent to deliver methamphetamine (as opposed to cocaine), and that the evidence found in the backpack likely affected the verdict. We must therefore reverse and remand defendant's conviction on Count I, unlawful delivery of methamphetamine.

We turn next to defendant's second and third combined assignments of error, which concern defendant's remaining convictions. Defendant argues that the trial court erred in denying his motion to sever the cases arising from the October and November 2008 incidents, and it also erred in consolidating the November 2008 case with the case involving the October 2008 and February and March 2009 incidents. According to defendant, he was substantially prejudiced by those rulings in that he was deprived of the protections of OEC 404(3), which prohibits the use of evidence of other crimes, wrongs, or acts to show that a person acted in conformity therewith.

In response, the state argues that defendant failed to demonstrate that joinder of the charges substantially prejudiced him. Defendant, the state contends, was not prejudiced because evidence of the four incidents was cross-admissible in each case under OEC 404(3) for purposes other than to show conformity with past acts—for example, to prove defendant's knowledge or intent to possess or deliver methamphetamine. Lastly, the state submits, the charges against defendant were sufficiently simple and distinct because the counts arose from four discrete incidents that occurred on four different days.

ORS 132.560(1)(b) allows the trial court to consolidate charging instruments when the offenses are alleged to have been committed by the same person and are either (1) "[o]f the same or similar character"; (2) "[b]ased on the same act or transaction"; or (3) "[b]ased on two or more transactions connected together or constituting parts of a common scheme or plan." *See* ORS 132.560(2) (allowing charging instruments to be consolidated when the criteria provided in ORS 132.560(1)(b) are met). However, if it appears "that the state or defendant is substantially prejudiced by a joinder of

offenses * * * the court may order an election or separate trials of counts or provide whatever other relief justice requires." ORS 132.560(3).

We review for errors of law the trial court's determination that defendant failed to demonstrate the existence of substantial prejudice under ORS 132.560(3). *State v. Luers*, 211 Or App 34, 43, 153 P3d 688, *adh'd to as modified on recons*, 213 Or App 389, 160 P3d 1013 (2007). Whether the joinder of charges substantially prejudiced a particular defendant involves a case-specific assessment of the charges and the facts alleged to support them. *Id.* The mere assertion that evidence relating to some charges will influence the jury's consideration of other charges is insufficient. *Id.* "Rather, the court's analysis properly must focus on '*any* circumstance' that impairs the defendant's right to a fair trial, such as, for example, a defendant's 'claim that joinder would deprive him of protections in the Oregon Evidence Code against the admission of evidence.'" *Id.* (quoting *State v. Miller*, 327 Or 622, 633, 969 P2d 1006 (1998) (emphasis in original)). When evidence pertaining to the various charges would be mutually admissible in separate trials or is sufficiently simple and distinct to mitigate the dangers created by joinder, substantial prejudice has not been established. *Luers*, 211 Or App at 43-44. Also relevant is the probable effectiveness of limiting instructions given to the jury by the court. *Id.* at 44. The reviewing court must be able to determine from the record that the trial court engaged in the required prejudice analysis. *Id.*

Here, the trial court consolidated the 2008 and 2009 charges under ORS 132.560(1)(b)(A) because they were "of a substantially similar character." Further, the trial court concluded as to the 2008 charges that "the evidence is sufficiently simple and distinct to mitigate the dangers created by joinder"; the court explained, "I don't think the defendant is substantially prejudiced by their joinder and certainly not in a way that cannot be cured by a jury instruction telling the jury to consider the evidence of each incident separately."

We agree with the trial court that substantial prejudice to defendant was not established. Even assuming that the evidence pertaining to the various charges would not be

mutually admissible in separate trials, the evidence was nonetheless sufficiently simple and distinct to mitigate the dangers created by joinder. The charges against defendant arose from four discrete incidents that occurred on four different days, and as the trial court concluded, a jury instruction could cure any prejudice from admitting evidence about the four incidents in one trial. Therefore, the trial court did not err in denying defendant's motion to sever the 2008 cases and granting the state's motion to consolidate the 2008 and 2009 cases.

Conviction on Count I in Case No. 0900084CR reversed and remanded; otherwise affirmed.