Argued and submitted November 12, 2019, affirmed September 15, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*
*v.*
ANTHONY RANDALL DELANEY,
*Defendant-Appellant.*
Clackamas County Circuit Court
17CR15134; A165686

498 P3d 315

Defendant was convicted of several offenses related to two incidents of sexual assault involving different victims. On appeal, defendant contends that the trial court erred in denying his pretrial motion to sever, in which he sought separate trials for the charges related to each victim. He argues that (1) the trial court's ruling was not sufficiently clear to allow the Court of Appeals to review whether it properly engaged in a substantial-prejudice analysis; (2) he would be substantially prejudiced by continued joinder because each victim's testimony regarding why she reported the assault would taint the other case and invite the jury to decide the cases on an improper basis; and (3) the trial court failed to weigh the probative value of the evidence that would have been presented at the joint trial against its prejudicial effect, pursuant to OEC 403. Defendant also assigns error to the court's nonunanimous jury verdict instruction. *Held*: The trial court's ruling was sufficiently clear for the Court of Appeals to infer that it engaged in the substantial-prejudice analysis. The Court of Appeals concluded that defendant failed to carry his burden to demonstrate substantial prejudice. Defendant also failed to preserve his argument regarding OEC 403 balancing. Finally, defendant's argument related to the unanimous jury verdict instruction was foreclosed by *State v. Dilallo*, 367 Or 340, 478 P3d 509 (2020).

Affirmed.

Michael C. Wetzel, Judge.

Ryan Scott argued the cause and filed the briefs for appellant.

Rolf C. Moan, Assistant Attorney General, argued the cause for respondent. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeVore, Presiding Judge, and DeHoog, Judge, and Mooney, Judge.

MOONEY, J.

Affirmed.

**MOONEY, J.**

Defendant was charged with six offenses related to two incidents of sexual assault involving different victims. A jury found defendant guilty of all six offenses. Count 3 was merged with Count 1 and Count 6 was merged with Count 4 at the time of sentencing and a judgment of conviction on Counts 1, 2, 4, and 5 was entered. On appeal, defendant contends that the trial court erred in denying his pretrial motion to sever, in which he sought separate trials for the charges related to each victim. As part of that contention, he argues that the court erred by failing to weigh the probative value of the evidence that would have been presented at the joint trial against its prejudicial effect, pursuant to OEC 403.[1] We conclude that the trial court did not err in denying the motion and that defendant failed to preserve his argument under OEC 403. Defendant also assigns error to the court's nonunanimous jury verdict instruction. Defendant concedes that he did not preserve that assignment of error and that no jury poll was requested or conducted. Accordingly, defendant's argument is foreclosed by *State v. Dilallo*, 367 Or 340, 478 P3d 509 (2020). We, therefore, affirm the judgment.

"We limit our review to the state of the record at the time of the court's ruling on the motion to sever." *State v. Buyes*, 280 Or App 564, 565, 382 P3d 562 (2016). We review for errors of law the trial court's determination that joinder of the charges would not "substantially prejudice" defendant, as required by ORS 132.560(3). *State v. Luers*, 211 Or App 34, 43, 153 P3d 688, *adh'd to as modified on recons*, 213 Or App 389, 160 P3d 1013 (2007). We must also be able to determine, from the record, that the trial court engaged in the required prejudice analysis. *State v. Bruning*, 180 Or App 247, 253, 42 P3d 365, *rev den*, 335 Or 114 (2002).

Defendant was charged in a single indictment with six counts: Counts 1 through 3—first-degree rape, ORS 163.375 (Count 1), first-degree sexual abuse, ORS 163.427 (Count 2), and second-degree sexual abuse, ORS 163.425

---

[1] Defendant incorrectly presents this argument as a separate assignment of error, because it challenges the same ruling of the trial court—the denial of his motion to sever. *See* ORAP 5.45(3) (each assignment of error must identify precisely the *ruling* of the trial court that is being challenged).

(Count 3)—were related to defendant's alleged conduct toward M. Counts 4 through 6—sodomy in the first degree, ORS 163.405 (Count 4), first-degree sexual abuse (Count 5), and second-degree sexual abuse (Count 6)—were related to defendant's alleged conduct toward L. Before trial, defendant moved to sever the charges related to each victim, arguing in his written motion that trying the two victims' cases together was improper because it would "prejudice" him. The trial court held a hearing on the motion, during which the state made an offer of proof of the evidence that it expected to present at trial. Consistent with our standard of review, we state the evidence as the state represented it would be at the hearing on defendant's motion.

The state began by describing M's case. According to the state, M did not know defendant until one of their mutual friends introduced them. Shortly thereafter, M contacted defendant so that he could help her sell her car. She went to his trailer in Estacada to meet with him while she was "crashing and coming down" from a methamphetamine high. Because of her "crash," at defendant's insistence, she took a nap in the hull of his boat, which was parked on his property.

When defendant told M that he was going to take the boat out, she responded that she would keep sleeping. When she woke up, the two of them were alone on the boat in the Clackamas River, defendant was behind her, her pants were pulled down, and he was raping her. At that point she froze because she was afraid of defendant. Her fear was based on (1) defendant's talk about being involved with a gang, (2) her understanding that defendant had guns on his person "all the time," (3) her belief that "he's this dangerous guy," and (4) the fact that the two of them were alone on a boat in the middle of the river. M pretended to sleep until after defendant finished, at which point she pretended to wake up.

Despite the alleged incident's date of summer 2014, M did not report the incident until fall 2016. She ultimately came forward "because she heard allegedly that he's done similar things to other women," and because she had "gotten clean." As a result of M's report, the state charged defendant with Counts 1 and 2, first-degree rape and first-degree

sexual abuse, alleging that M was physically helpless, and Count 3, second-degree sexual abuse, alleging that M did not consent to sexual intercourse.

As to L, the state represented that the evidence would show that defendant dealt drugs to L's boyfriend around the time of the alleged crime. As a result, L had "hung out" and "done methamphetamine" with defendant before the incident. According to the state, L would testify that, on August 25, 2016, she was walking down the road in southeast Portland when defendant saw her, and offered her a ride. She accepted and he agreed to take her to her relative's house. When she realized that they were going in the wrong direction, she asked why, and he responded that he was taking her to his trailer in Estacada. She told him that she did not want to go there, but defendant said that he needed to "do a few things" and that he would take her wherever she wanted to go when he was finished. When they arrived, he told her that he needed about an hour, so she decided to go into his trailer with him.

Shortly after going into his trailer, defendant asked L to give him oral sex. She was initially afraid because she knew that (1) defendant was involved in a gang, (2) he had several guns around, and (3) there were "scary" stories about him. Defendant then allegedly pointed a gun at L's head, hit her head, and forced her to perform oral sex on him. Later, she asked him if she could go to the bathroom, which was outside, but he would not let her unless he went out and watched her. At some later point that evening, defendant fell asleep on top of L's purse; she decided to leave without it to avoid waking him up. She left the trailer and ran down the road where she encountered a man who provided her with transportation into town. She then contacted the police and reported the sexual assault. An officer documented her injuries and took her statement, which, according to the state, was consistent with what is described above. As a result, defendant was charged with Counts 4 through 6, first-degree sodomy, first-degree sexual abuse, and second-degree sexual abuse.

After the state's offer of proof, the parties argued about the relevant legal framework for ruling on a motion

to sever. Defendant argued that, if the evidence were presented at trial consistently with the way in which the state described it at the motion hearing, he would be "substantially prejudiced." Defendant asserted that, by trying the cases together, each case would "cross-pollinate"[2] the other one because M's explanation for waiting to come forward would bolster L's testimony about reporting her own assault. In other words, if M testified that she had reported her assault months after it occurred, and L testified that she wanted to report her assault because she had heard that defendant was dangerous, each victim would provide a common explanation for their cooperation. And, ultimately, their testimony would combine to demonstrate that defendant had a propensity for violence.

Defendant also asserted that, if he were tried separately on the counts related to each alleged victim, "[n]one of the evidence *** from one case would be admissible in the other case." And because of that lack of mutually admissible evidence, defendant argued that the jury's simultaneous exposure to both cases would substantially prejudice him. Defendant did not specifically argue, however, that the evidence from one case would be inadmissible in the other case under an OEC 403 balancing analysis.

The state responded that there would not be any "cross-pollination" because the facts of the two cases were "simple and distinct" and, with a proper limiting instruction and limitations on cross-examination, neither of the two victims' testimony would influence the jury's decision in the other woman's case. The "simple and distinct" theory, as we explain below, allows the admission of evidence related to each victim's case in a joint trial so long as the jury can determine which facts are relevant to each case. The state specifically relied upon *State v. Miller*, 327 Or 622, 969 P2d 1006 (1998); *State v. Norkeveck*, 214 Or App 553, 168 P3d 265 (2007), *rev den*, 344 Or 558 (2008); and *State v. Cox*, 272 Or App 390, 396, 359 P3d 257 (2015), to support its "simple and distinct" theory.

_____

[2] We understand defendant to use the phrase "cross-pollinate" to refer to the jury's consideration of evidence of the assault of each victim when deciding the charges as to the other victim's case.

In *Miller*, the Supreme Court explained that, under ORS 132.560(3), undue prejudice does not necessarily result from the joinder of multiple offenses related to different victims in a single trial. 327 Or at 629. Rather, trial courts must engage in a "case-by-case assessment" of the charges before concluding that charges must be tried separately. *Id.* In both *Norkeveck* and *Cox*, we assessed the evidence and concluded that the charges related to each victim were "sufficiently simple and distinct that the trier of fact would have been able to separately consider the charges." *Norkeveck*, 214 Or App at 560-61; *Cox*, 272 Or App at 397-98. In *Cox*, we further noted that, "'even if we assume[d] that the evidence in each case was not mutually admissible in the other, the evidence in the cases was sufficiently simple and distinct to mitigate the dangers created by joinder.'" 272 Or App at 397 (quoting *State v. Gensler*, 266 Or App 1, 9, 337 P3d 890 (2014), *rev den*, 356 Or 690 (2015)).

We understand the state's argument to have been that, because the charges related to each victim are simple and distinct from those related to the other, a jury could separate the facts related to each victim's case and determine defendant's guilt related to each victim without the evidence from the other case influencing its decision. Defendant specifically acknowledged that there was "nothing that joins these people together except the allegation that they were subjugated to illegal criminal activity by [defendant]." He argued, however, that each victim's explanation for why she reported the assaults would potentially cause the jury to link the two victims' cases together. That is, they would explain that they each reported the assault because they "heard about all these prior bad acts he did on these other women." And that, he argued, would result in an inherently prejudicial trial.

For the most part, the prosecutor did not represent that the victims would testify about defendant's prior conduct or of their understanding of his general propensity for dangerousness. The only facts that the state represented regarding defendant's conduct toward other women were related to M's delayed reporting of her case; the state explained that M would testify that she had waited to disclose the incident to the police "because she's heard allegedly that he's done

similar things to other women." In the alternative, the state argued that, if the court granted the motion, the evidence would be cross-admissible for propensity purposes under OEC 404(4), citing *State v. Williams*, 357 Or 1, 346 P3d 455 (2015).

The trial court took the matter under advisement and the next day issued its ruling from the bench, stating without further elaboration: "I do believe, based on the case law provided by [the state], that I clearly have to deny the defense's motion to sever." The case proceeded to trial. Defendant never requested a limiting instruction informing the jury that it needed to consider the two victims' cases separately. The jury found defendant guilty on all six counts. The court entered a judgment of conviction and this appeal followed.

On appeal, defendant challenges the trial court's denial of his motion to sever, again raising the argument that he made below—that each victim's proffered explanation for coming forward would "cross-pollinate" the other's case because those explanations would show that defendant had a general propensity toward sexual violence. Defendant also argues that, in any event, the trial court did not provide an adequate explanation for why trying the two cases together would not "substantially prejudice" defendant.

The state responds that the trial court's ruling was adequate because the court stated that it was relying on the "simple-and-distinct" line of cases that the state had provided. As to the merits, the state argues that, because defendant bore the burden to show that he would be substantially prejudiced by a joint trial, and because defendant did not argue a case-specific theory of prejudice, the court did not err. Second, it argues that, in any event, the cases related to each victim were sufficiently simple and distinct to mitigate the dangers created by joinder. We do not agree with the state that defendant failed to argue a case-specific theory for why severance was appropriate. We do agree, however, that defendant did not carry his burden to show that he would be substantially prejudiced by a denial of his motion to sever. We therefore conclude that the trial court did not err in denying defendant's motion to sever.

Typically, if a defendant were tried for charges related to his conduct against two alleged victims, evidence related to one case would be inadmissible "propensity" evidence in the other case under OEC 404(3). *See State v. Skillicorn*, 367 Or 464, 482-83, 479 P3d 254 (2021) (explaining admissibility under OEC 404(3)). To admit that evidence, the state must demonstrate its admissibility for some other "non-propensity purpose." *See* OEC 404(3) (listing permissible nonpropensity reasons for admitting evidence of prior bad acts). In a consolidated trial, evidence of each case is admissible for a nonpropensity purpose—"to prove that defendant had perpetrated the particular offenses to which that evidence pertained." *Miller*, 327 Or at 632.

ORS 132.560(2) permits a trial court to join offenses charged in separate indictments when the offenses are of "the same or similar character." That provision "is to be broadly construed in favor of initial joinder." *State v. Staley*, 142 Or App 583, 589, 923 P2d 650 (1996), *rev den*, 324 Or 560 (1997). ORS 132.560(3), in turn, provides that, "[i]f it appears, upon motion, that the state or defendant is substantially prejudiced by a joinder of offenses ***, the court may order an election or separate trials of counts." The party objecting to joinder—in this case, defendant—bears the burden to demonstrate substantial prejudice. *State v. Beauvais*, 261 Or App 837, 849, 322 P3d 1116 (2014), *aff'd*, 357 Or 524, 354 P3d 680 (2015). And the party objecting to joinder must make a case-specific argument for why joinder will create substantial prejudice; "[t]he mere assertion that evidence relating to some charges will influence the jury's consideration of other charges is insufficient." *Luers*, 211 Or App at 43; *see also State v. Thompson*, 328 Or 248, 257, 971 P2d 879, *cert den*, 527 US 1042 (1999) (rejecting merely conclusory allegations that joinder involving multiple victims was prejudicial); *State v. Crummett*, 274 Or App 618, 621-22, 361 P3d 644 (2015), *rev den*, 359 Or 525 (2016) (same).

A defendant cannot establish substantial prejudice "if the evidence pertaining to the separate charges is 'mutually admissible in separate trials or is sufficiently simple and distinct to mitigate the dangers created by joinder[.]'" *State v. Tidwell*, 259 Or App 152, 155, 313 P3d 345 (2013),

*rev den*, 355 Or 142 (2014) (quoting *State v. Dimmick*, 248 Or App 167, 178, 273 P3d 212 (2012)). At issue here is the simple-and-distinct theory. Neither party argues, on appeal, that the evidence related to M's case would have been admissible in L's, or vice versa. When a party invokes the simple-and-distinct theory, we look to several factors, including whether the charges related to each victim were separated in time and place, *Dimmick*, 248 Or App at 179; whether the incidents at issue were discrete events, *State v. Roelle*, 261 Or App 705, 709, 323 P3d 567, *rev den*, 356 Or 397 (2014); whether "the evidence in each case was uncomplicated and supported by separate witnesses," *Tidwell*, 259 Or App at 155; and whether the prejudice identified could be mitigated by jury instructions and by limiting the scope of the state's cross-examinations, *Gensler*, 266 Or App at 9.

We turn now to the arguments made in this case. As a threshold matter, defendant argues that the trial court's ruling was not sufficiently clear to allow us to review whether it properly engaged in the substantial prejudice analysis. *Bruning*, 180 Or App at 253. When it ruled from the bench, the court stated only that, based on the cases provided by the state, it "clearly ha[d] to" deny defendant's motion. Defendant argues that the court's ruling is ambiguous because it is not clear whether the court was denying his motion based on the simple-and-distinct theory or the mutual-admissibility theory. And, because of that ambiguity, we cannot review whether the court properly engaged in the substantial prejudice analysis.

We disagree. The trial court's ruling is sufficiently clear for us to infer that it engaged in the substantial prejudice analysis. Based on the cases that the state provided—particularly *Norkeveck* and *Cox*[3]—and based on the state's actual argument, the state relied only on the simple-and-distinct theory. It never argued that the evidence was cross-admissible, or that it would offer the evidence

---

[3] The state also relied on *Miller*, which stands for the proposition that evidence related to both victims is admissible in the same trial for the nonpropensity purpose of conducting a joint trial. The court in *Miller* did not articulate a specific theory for why joinder was appropriate in that case; it merely rejected the defendant's conclusory argument that he was prejudiced under ORS 132.560(3) as a result of joinder.

from one victim's case in the other's during the joint trial. Although the court did not expressly say which theory it was relying on when it ruled from the bench, its reference to the cases cited by the state demonstrates that it did engage in the substantial prejudice analysis and that it denied defendant's motion based on the state's simple-and-distinct theory. *Cf. State v. Anderson*, 363 Or 392, 409, 423 P3d 43 (2018) (inferring that the trial court engaged in OEC 403 balancing even though it did not expressly discuss the concepts implicit in that analysis).

It is true that the prosecutor also asserted that the state would seek to admit each victim's testimony under OEC 404(4) *if the court granted defendant's motion to sever the charges*. However, that statement does not change our conclusion. The prosecutor made clear that the state would attempt to have each victim testify in the other's case only if the cases were tried separately; he stated that, "if you were to sever these cases based on your discretion, then I'm going to turn around and ask that" each victim testify in the other's case, pursuant to *Williams*. At no point, however, did he argue that the evidence was cross-admissible in the joint trial. Thus, the trial court did not have two alternative theories before it as to why trying the cases together would not cause "substantial prejudice." By citing the cases that the state provided and *denying* defendant's motion, it is clear that the court denied the motion based on the simple-and-distinct theory—the only theory upon which the state argued in favor of a denial—not the mutual admissibility theory.

We now turn to the merits of defendant's substantial prejudice argument. The state correctly points out that defendant bears the burden to demonstrate substantial prejudice. It is also correct that a defendant must do more than merely assert conclusory allegations of substantial prejudice that would result from a joined trial. *See Miller*, 327 Or at 629 (requiring a "case-by-case assessment" on the issue of substantial prejudice resulting from joinder). We disagree with the state, however, that defendant's theory in this case was not "case-specific." Before the trial court, defendant acknowledged that "[t]here is nothing that joins these [alleged victims] together except the allegation that

they were subjected to illegal criminal activity by" defendant. However, he then argued that the two victims would "cross-pollinate" each other's cases because they would explain that they "came forward because [they] heard all about these prior bad acts that he's done on other women." That is, his theory was that each victim's introduction of propensity evidence related to why she reported the assault would taint the other case and invite the jury to decide the cases on an improper basis. That theory was sufficiently specific.

Having concluded that defendant's theory of substantial prejudice was sufficiently specific, we nonetheless conclude that he failed to carry his burden to demonstrate substantial prejudice. First, we note that the state represented that only one victim, M, would testify about her motivations for reporting her assault. The state explained that she would testify that her report—which she had delayed by over two years—was due to defendant's reputation for having done "similar things to other women." The state never represented that L would testify about defendant's propensity toward violence against women.

Second, the record is sufficient to support the trial court's determination that defendant would not be substantially prejudiced by continued joinder of the offenses for trial because the evidence regarding the two incidents was sufficiently simple and distinct to mitigate the dangers created by a joint trial. The facts of this case are similar to those of *Cox* and *Gensler*. In *Cox*, we held that evidence pertaining to separate charges was sufficiently simple and distinct when a defendant was tried for sexually assaulting two victims. The state opposed severance because it intended to show that the defendant molested one victim while he was "grooming" the other one, and the two victims eventually spoke about the abuse and reported it to the police. 272 Or App at 396. The state further argued that the defendant could avoid the prejudice resulting from the cross-contamination of both victims' testimony by providing a proper jury instruction and limiting the scope of the defendant's own testimony (if he chose to testify) to one victim at a time. *Id.* We affirmed the trial court's denial of the motion to sever, explaining—very briefly—that proper jury

instructions and limitations to the defendant's testimony would effectively cure any danger of substantial prejudice. *Id.* at 397-98. In *Gensler*, we likewise concluded that, because the charges "arose from different incidents that occurred at different times and places and involved different victims," the availability of proper jury instructions and limiting the state's cross-examination would have cured any prejudice resulting from joinder. 266 Or App at 9.

Here, as represented by the state, the evidence was sufficiently simple and distinct to mitigate the dangers of joinder. Like the charges in *Cox* and *Gensler*, the charges in this case arose from different incidents that occurred at different times and places and involved different victims. As the state represented it, the victims' testimony would make clear that their accounts were unrelated; they would not testify about each other's cases; they did not know each other and would not testify about having heard each other's stories; and the state never alleged that defendant acted with some common purpose or goal that would somehow link the two victims together. Additionally, the state explained that the court could limit the scope of cross-examinations and provide jury instructions[4] to ensure that there would be no confusion at trial.

Moreover, defendant's contention that one victim's testimony about defendant's reputation for violence would "cross-pollinate" the other victim's case is unfounded. If, at trial, M and L had testified about defendant's propensity of violence toward women, defendant could have objected to the testimony under OEC 404(3) or OEC 403. That objection would not have anything to do with the particularized dangers of prejudice that arise in joined cases. The court's task in determining whether substantial prejudice would arise *as a result of joinder* is different than its task in determining whether certain statements would be admissible at

---

[4] As was the case in *Gensler*, defendant never requested limiting jury instructions and has not assigned as plain error the court's failure to provide such instructions. We therefore need not decide whether that decision was erroneous. *See State v. Williams*, 272 Or App 770, 772-73, 358 P3d 299 (2015), *rev den*, 358 Or 611, *cert den*, 579 US 907, 136 S Ct 2472 (2016) (concluding that substantial prejudice did not arise even though no curative jury instructions were given because the defendant never requested such instructions).

trial, as a general matter. Although there may be some overlap in that assessment, certain propensity evidence may be inadmissible at trial, even if trying two cases together were appropriate. *See Miller*, 327 Or at 631 ("The inquiry into the likelihood of prejudice under ORS 132.560(3) may encompass an analysis of the admissibility in a joint trial of evidence of prior crimes, wrongs, or acts under OEC 404(3)[,] * * * [h]owever, the question of prejudice under ORS 132.560(3) is separate from, and is not necessarily controlled by, the question of the admissibility of other crimes evidence under OEC 404(3)."). It is not the court's job to resolve all possible evidentiary disputes at a pretrial hearing on a motion to sever. It can rule on the admission of particular portions of testimony at trial. If the facts presented are sufficiently simple and distinct, substantial prejudice does not arise, and joinder is appropriate. Because the victims' cases were simple and distinct, the trial court did not err in denying the motion to sever.

As noted, defendant also argues that the trial court erred by failing to "engage in any prejudice analysis in ruling on" his motion to sever. He asserts that the court "neither balanced the probative value [of the evidence] versus the prejudicial effect, in order to determine cross-admissibility of the evidence, nor conducted the prejudice analysis in determining whether substantial prejudice would result from the failure to sever." Regarding defendant's first point, we understand him to contend that the court erred because it never engaged in OEC 403 balancing to determine whether the probative value of the two victims' testimony in each other's cases substantially outweighed the prejudicial effect of that testimony, such that each would be admissible in the other's case. As discussed above, however, the trial court did not rely on the cross-admissibility of the evidence as a basis for denying defendant's motion to sever the charges. *See* 314 Or App at 569-70. Accordingly, that argument is inapposite. As to his second point, to the extent that defendant contends that the trial court could not properly conclude that the charges were sufficiently simple and distinct—and that he therefore would not be substantially prejudiced by denial of his motion to sever—without conducting OEC 403 balancing *as part of that analysis*, we agree with the state

that defendant failed to preserve that argument. He never argued that such a balancing was necessary, and he never invoked OEC 403.

In support of his argument that he preserved his OEC 403-related argument, defendant asserts that, although he never cited OEC 403, his reference to "substantial prejudice preserves the argument that an OEC 403 balancing test is required." We disagree. A party preserves an argument for review if he or she "provide[s] the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). The question of whether a party has preserved an argument "inevitably will turn on whether, given the particular record of a case," the policies underlying the rule of preservation have been served. *State v. Parkins*, 346 Or 333, 341, 211 P3d 262 (2009). The primary purposes of the preservation rule "are to allow the trial court to consider a contention and correct any error, to allow the opposing party an opportunity to respond to a contention, and to foster full development of the record." *State v. Clemente-Perez*, 357 Or 745, 752, 359 P3d 232 (2015).

It is true, as defendant points out, that, in *State v. Kelley*, 293 Or App 90, 97, 426 P3d 226 (2018), we held that an explicit reference to OEC 403 "is not required if the circumstances otherwise suffice to place the court and opposing parties on notice of defendant's contention that any probative value was outweighed by the risk of unfair prejudice." But that was not the case here. In *Kelley*, the state sought to introduce evidence that the defendant had previously been violent toward the alleged victim. The defendant argued that the evidence was inadmissible under OEC 404(3) and that its introduction would be "highly prejudicial." *Id.* Given that context, we held that the defendant had preserved his argument that the prior acts evidence at issue was inadmissible under OEC 403—even though he never explicitly invoked that rule of evidence. *Id.* In context, the defendant's reference in that case to evidence being "highly prejudicial" could only reasonably have been related to determining prejudice under OEC 403.

Here, unlike in *Kelley*, defendant never suggested that the trial court needed to determine whether the probative value of the evidence would be substantially outweighed by the prejudice of having the two victims testify in each other's cases in order to determine whether defendant would be substantially prejudiced by joinder of the charged offenses for trial. The purposes of the preservation rule were therefore not served. Accordingly, we reject defendant's OEC 403 argument.

Affirmed.