*This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).*

Submitted June 24, affirmed October 19, 2022, petition for review allowed in part March 9, 2023 (370 Or 822)
See later issue Oregon Reports

STATE OF OREGON,
*Plaintiff-Respondent,*
*v.*

DEMETRIO MEDINA SOTO,
aka Demetrio Soto,
*Defendant-Appellant.*

Marion County Circuit Court
18CR75404, 18CR47005;
A174899 (Control), A174900

Thomas M. Hart, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Rond Chananudech, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Michael A. Casper, Assistant Attorney General, filed the briefs for respondent.

Before James, Presiding Judge, and Aoyagi, Judge, and Joyce, Judge.

JOYCE, J.

Affirmed.

James, P. J., concurring.

**JOYCE, J.**

Defendant appeals from judgments of conviction in two cases that were consolidated for a bench trial. In the first, the trial court convicted defendant of first-degree criminal trespass and telephonic harassment. In the second, the trial court convicted defendant of first-degree kidnapping, first-degree sodomy, first-degree burglary, strangulation constituting domestic violence, fourth-degree assault constituting domestic violence, and menacing. Defendant raises five assignments of error. For the reasons that follow, we affirm.

MOTION FOR JUDGMENT OF ACQUITTAL

In his first assignment of error, defendant contends that the trial court erred in denying his motion for judgment of acquittal (MJOA) on the first-degree kidnapping charge. On review of a denial of an MJOA, "we view the evidence in the light most favorable to the state to determine whether a rational trier of fact, making reasonable inferences, could have found the essential elements of the crime proved beyond a reasonable doubt." *State v. Lewis*, 266 Or App 523, 524, 337 P3d 199 (2014) (quoting *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998)). We conclude that the trial court correctly denied defendant's MJOA.

In the light most favorable to the state, the relevant facts are as follows. In October 2018, defendant forced himself inside the victim's apartment, wrapped his arms around her, carried her into the primary bedroom, and threw her onto the bed. Defendant then took her cellphone out of her hand, searched the apartment for other people, closed her children's bedroom door, shut the window in the primary bedroom, and turned up the volume of the music that was playing in the bedroom. Defendant dragged the victim into the bathroom by her hair, closed the door, and then proceeded to assault and sodomize her. Defendant punched the victim and told her to "be quiet" and "shut up" any time she made a noise. Defendant also told her to "sit back down" when she tried to stand up off the bathroom floor and "pushed [her] back into the [primary] bedroom" when she tried to escape.

The state subsequently charged defendant with first-degree kidnapping. As to that charge, the state was required to prove that (1) defendant took the victim from one place to another, (2) with intent to interfere substantially with the victim's personal liberty, (3) without consent or legal authority, (4) with the purpose of causing her physical injury. ORS 163.225(1)(a); ORS 163.235(1)(c); *State v. Walch*, 346 Or 463, 468, 213 P3d 1201 (2009).

In his MJOA, defendant challenged two aspects of the state's evidence. He first argued that the state failed to prove that the victim's ending place—the bathroom—was qualitatively different from her starting place—the front door. Specifically, defendant claimed that the movement did not serve to increase the victim's isolation because both locations were within the same apartment and the victim was already isolated within her own apartment. *See State v. Sierra*, 349 Or 506, 513, 254 P3d 149 (2010), *adh'd to as modified on recons*, 349 Or 604, 247 P3d 759 (2011) (a defendant moves a victim from one place to another "only when the defendant changes the position of the victim such that, as a matter of situation and context, the victim's ending place is qualitatively different from the victim's starting place"); *see also State v. Washington*, 266 Or App 133, 138-39, 337 P3d 859 (2014), *rev den*, 356 Or 767 (2015) (an important consideration when determining whether two places are qualitatively different is "whether the movement served to limit the victim's freedom of movement and increase the victim's isolation" (quoting *Walch*, 346 Or at 475)). Defendant also argued that the state failed to adduce sufficient evidence that he intended to interfere substantially with the victim's personal liberty. The trial court denied the motion, concluding that the state had offered sufficient evidence as to both elements.

We agree with the trial court. We reject defendant's argument that the victim's ending place was not qualitatively different than her starting place for the same reasons that we previously articulated in *Washington*. 266 Or App at 138-41 (a reasonable factfinder could find that the defendant increased the victim's isolation by moving her from the front door of her apartment, an area where neighbors

might have seen her, to a more isolated place within her apartment before raping her). Here, as in *Washington*, a reasonable factfinder could find that defendant increased the victim's isolation by moving her from the front door of her apartment, an area where her children might have seen her, to the bathroom, a more isolated part of the apartment that could only be accessed through the primary bedroom, before assaulting and sodomizing her.

We also conclude that the record contained sufficient evidence that showed that defendant intended to interfere substantially with the victim's personal liberty. As to that element, "our review narrows to whether a rational jury could find that [the defendant] intended to interfere substantially with [the victim]'s personal liberty, including her 'freedom of movement', such that the abduction was not merely incidental to other related, but independent, crimes." *State v. Worth*, 274 Or App 1, 11-12, 360 P3d 536 (2015), *rev den*, 359 Or 667 (2016) (internal citations, quotations marks, and brackets omitted). Here, the state offered evidence that defendant physically restrained the victim by wrapping his arms around her when he moved her from the front door to the bedroom. He then confined the victim to the bathroom with the door closed,[1] thwarting any escape attempts by punching her and telling her to "shut up" any time she made noise. He also told the victim to "sit back down" when she tried to stand up and he pushed her back into the bedroom when she tried to escape. Based on that evidence, a rational trier of fact could find that defendant intended to interfere substantially with the victim's personal liberty such that the abduction was not merely incidental to, or that it facilitate[d] and further[ed] the commission of, defendant's other crimes.

## CONSECUTIVE SENTENCES

In his second assignment of error, defendant contends that the trial court erred in ordering that a portion of the sentences on the first-degree kidnapping and first-degree sodomy convictions run consecutively to one another

---

[1] Even where, as here, the state asserts an asportation theory, the trier of fact may nonetheless consider evidence of confinement because it is "probative of [the] defendant's state of mind." *State v. Mejia*, 348 Or 1, 12, 227 P3d 1139 (2010).

under ORS 137.123(5)(a) and (b).[2] The trial court imposed partial consecutive sentences after finding that "the decision to commit the sodomy, while you were exercising power and control in the form of domestic violence with regard to the kidnap and the burglary, justifies a consecutive sentence[.]"

We review a trial court's imposition of consecutive sentences for errors of law and determine whether the trial court's predicate factual findings are supported by "any evidence" in the record. *State v. Traylor*, 267 Or App 613, 615-16, 341 P3d 156 (2014). With that standard of review in mind, we have reviewed the record and conclude that the trial court's imposition of consecutive sentences under subsection (5)(a) was proper.[3]

## MOTION TO SEVER

In his third and fourth assignments of error, defendant contends that the trial court erred in denying his motion to sever. In addition to the October incident, in July 2018,[4] defendant entered the victim's apartment unannounced and without permission (in fact, the victim had told defendant earlier that day that he could not come over). The victim and her friend repeatedly asked defendant to leave the apartment, but he refused to do so until the friend called 9-1-1. When law enforcement arrived, the victim reported that

---

[2] Under ORS 137.123(5), the trial court may impose consecutive terms of imprisonment for separate convictions "arising out of a continuous and uninterrupted course of conduct" only if it finds one of the following:

"(a) That the criminal offense for which a consecutive sentence is contemplated was not merely an incidental violation of a separate statutory provision in the course of the commission of a more serious crime but rather was an indication of defendant's willingness to commit more than one criminal offense; or

"(b) The criminal offense for which a consecutive sentence is contemplated caused or created a risk of causing greater or qualitatively different loss, injury or harm to the victim or caused or created a risk of causing loss, injury or harm to a different victim than was caused or threatened by the other offense or offenses committed during a continuous and uninterrupted course of conduct."

[3] Because the consecutive sentences were legally permissible under subsection (5)(a), we do not address defendant's argument that consecutive sentences were not legally permissible under subsection (5)(b).

[4] We summarize the July 2018 incident based on the evidence that was in the record at the time that the trial court ruled on defendant's motion to sever. *State v. Buyes*, 280 Or App 564, 565, 382 P3d 562 (2016) ("We limit our review to the state of the record at the time of the court's ruling on the motion to sever.").

defendant had been calling and messaging her excessively, despite her requests that he stop. On that day alone, defendant had called and messaged her at least 20 times, and he called her while the officers were taking her statement. The state subsequently charged defendant with first-degree criminal trespass and telephonic harassment.

On the state's motion, the trial court joined the July and October offenses. Defendant later challenged the joinder and moved to sever, arguing that, even if the cases were properly joined, he was substantially prejudiced by their joinder.[5] Both of those issues are legal determinations that we review for errors of law. *State v. Dewhitt*, 276 Or App 373, 380, 368 P3d 27, *rev den*, 359 Or 667 (2016) (whether the charging instruments were properly joined); *State v. Miller*, 327 Or 622, 629, 969 P2d 1006 (1998) (whether joinder of the offenses was likely to cause prejudice).

We start by considering whether the charges were properly joined under ORS 132.560. ORS 132.560(2) provides that a trial court may consolidate two or more charging instruments if they meet the circumstances described in ORS 132.560(1)(b), which are as follows:

"*** the offenses charged are alleged to have been committed by the same person or persons and are:

"(A)   Of the same or similar character;

"(B)   Based on the same act or transaction; or

"(C)   Based on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

Joinder is appropriate under ORS 132.560(1)(b)(C) if "the joined counts or charges are logically related, and there is a large area of overlapping proof between them." *Dewhitt*, 276 Or App at 383 (quoting *State v. Johnson*, 199 Or App 305, 317, 111 P3d 784, *rev den*, 339 Or 701 (2005) (brackets omitted)). One instance where charges are "logically related" is where the "later charges stem from, or are

---

[5] On appeal, defendant also argues that joinder resulted in a fundamentally unfair trial in violation of his right to due process of law under the federal constitution. We decline to consider that argument because defendant did not preserve it below nor does he request plain error review on appeal.

otherwise precipitated by, an earlier charge." *Id.* at 384-85 (citing *State v. Wittwer*, 214 Or App 459, 463, 166 P3d 564 (2007)). In its opposition to defendant's motion to sever, the state offered defendant's statements that, while awaiting trial on the charges arising from the July incident, he committed the October offenses as "punishment for [the victim's] earlier [police] report" and to make his anticipated prison sentence "worth [his while.]" As the state notes, defendant's own statements show that the October offenses were precipitated by the victim reporting the July offenses to law enforcement. Accordingly, the circumstances described in ORS 132.560(1)(b)(C) were met and the trial court properly joined the July and October offenses under ORS 132.560(2).

Defendant next argues that, even if joinder was proper, the trial court still erred in denying his motion to sever because he was substantially prejudiced by the joinder.[6] We have long recognized that the possibility of prejudice exists, "at least in the abstract, in virtually every situation in which charges are joined for trial." *Dewhitt*, 276 Or App at 386-87. Accordingly, the moving party "must identify a 'case-specific' circumstance that impairs [their] right to a fair trial in such a way that a danger of substantial prejudice cannot be mitigated in other ways." *Id.* at 387 (quoting *State v. Luers*, 211 Or App 34, 43-44, 153 P3d 688, *adh'd to as modified on recons*, 213 Or App 389, 160 P3d 1013 (2007)); *see also State v. Crummett*, 274 Or App 618, 620, 361 P3d 644 (2015) ("The party seeking severance of properly joined charges bears the burden of demonstrating that joinder will result in substantial prejudice." (Internal citations omitted.)).

In attempting to meet his burden, defendant identifies several case-specific circumstances that he believes prejudiced him: the evidence in each case would not be cross-admissible in the other case; a single trial prevented him from invoking his Fifth Amendment right for only the July offenses; and a single trial prevented him from proceeding to a jury trial (rather than a bench trial) on only the October offenses.

---

[6] ORS 132.560(3) provides that, "[i]f it appears, upon motion, that the state or defendant is substantially prejudiced by a joinder of offenses * * *, the court may order an election or separate trials of counts or provide whatever other relief justice requires."

We are not persuaded by defendant's first argument that he was substantially prejudiced by the joinder because the evidence in each case would not be cross-admissible in the other case. Even if the trial court erred in concluding that the evidence would have been mutually admissible in separate trials, our case law establishes that, when evidence pertaining to the various charges "is sufficiently simple and distinct to mitigate the dangers created by joinder, substantial prejudice has not been established." *State v. Dimmick*, 248 Or App 167, 178-79, 273 P3d 212 (2012) (citing *Luers*, 211 Or App at 43-44); *see also State v. Tidwell*, 259 Or App 152, 155, 313 P3d 345 (2013), *rev den*, 355 Or 142 (2014) ("even if we assume that the evidence in each case was not mutually admissible in the other[,]" the evidence was "sufficiently simple and distinct to mitigate the dangers created by joinder"). When a party invokes the simple-and-distinct theory, as the state does here, we look to several factors, including: "whether the charges related to each victim were separated in time and place, whether the incidents at issue were discrete events, whether the evidence in each case was uncomplicated and supported by separate witnesses, and whether the prejudice identified could be mitigated by jury instructions and by limiting the scope of the state's cross-examinations." *State v. Delaney*, 314 Or App 561, 569, 498 P3d 315, *rev allowed*, 369 Or 69 (2021) (internal citations and quotation marks omitted)).

Here, although the offenses took place in the same apartment, they arose from two discrete incidents, they occurred on two different days, and the evidence was uncomplicated and supported by separate witnesses.[7] Moreover, given the nature of a bench trial, the prejudice identified by defendant could have been effectively mitigated by the trial court's self-instructions[8] and by limiting the scope of the state's cross examinations.[9] *See Tidwell*, 259 Or App at 155

---

[7] Of the 12 witnesses that the state called, only three—the victim, defendant's sister, and an officer—testified about both offenses.

[8] A trial court's self-instructions in a bench trial are comparable to jury instructions. *State v. Colby*, 295 Or App 246, 250 n 1, 433 P3d 447 (2018).

[9] As further proof of substantial prejudice, defendant points to the fact that evidence in each case was *in fact* used as propensity evidence in the other case at trial. But, as noted above, our review is limited to the state of the record at the time of the trial court's ruling on the motion to sever; we cannot consider whether

(probable effectiveness of limiting instructions is relevant to whether defendant has established substantial prejudice).

We are also unpersuaded by defendant's second and third substantial prejudice arguments—that joinder prevented him from invoking his Fifth Amendment right as to the July offenses and prevented him from proceeding to a jury trial on the October offenses. As the state observes, the difficulty with those arguments is that neither assertion is factually accurate. The trial court initially ordered that the July offenses be tried separately from the October offenses specifically so that defendant could waive jury on the July offenses. The trial court also ordered, on defendant's request, that the July offenses be tried the day *before* the October offenses so that defendant could invoke his Fifth Amendment right on the July offenses only.

Then, the day before the scheduled bench trial on the July offenses, defendant filed a waiver of jury trial on both the July offenses and the October offenses. When questioned about the decision, defendant assured the trial court that he understood the situation and wanted to proceed with a single bench trial on all charges:

"THE COURT:  All right. And you've been in court on other occasions. You seem pretty level-headed. And you understand the situation that you're in and you've talked to your lawyer about this, right?

"THE DEFENDANT:   Absolutely.

"THE COURT:   Okay. A jury typically would determine the facts. I'd give them the law, and then that's how they would reach a verdict. By waiving your right to a trial by a jury, I would do both the facts and the law. Do you understand that?

"THE DEFENDANT:   Yes, I do, Your Honor.

---

evidence was in fact admitted at trial or the purposes for which such evidence was offered at trial. *State v. Turner*, 153 Or App 66, 74, 956 P2d 215, *rev den*, 327 Or 317 (1998) (When reviewing a trial court's ruling on a motion to sever, we "examine the decision in light of the arguments asserted and circumstances pertaining at the time the pretrial motion was made. *** Errors that occur during trial may provide grounds for a mistrial motion or for other relief, but they cannot provide the basis for a motion to sever.").

"THE COURT:    And is that the way you wish to proceed at trial?

"THE DEFENDANT:    Definitely.

"* * * * *

"THE COURT:    Okay. Then I'm going to find that you are freely, knowingly, and voluntarily waiving your right to have this case presented to a jury. And what we'll do is go to trial and I'll—I'll be both the fact-finder and apply the law and reach a verdict that way, okay?

"THE DEFENDANT:    Yes, Your Honor. Thank you."

After noting that defendant's jury waiver would shorten the length of the trial by one day, the trial court asked defendant and defense counsel separately whether there were any other matters that they wanted to discuss. They both responded that there was nothing further at that time.

Under the circumstances, it cannot be said that the trial court deprived defendant of his Fifth Amendment and jury trial rights; to the contrary, the trial court ruled that defendant could have the two cases tried separately specifically so that defendant could utilize those rights and avoid the very prejudice that he now claims on appeal. We thus conclude that defendant has failed to demonstrate substantial prejudice from joinder of the cases.

## CULPABLE MENTAL STATE

Finally, in a supplemental assignment of error, defendant contends that, in light of the Supreme Court's recent decision in *State v. Owen*, 369 Or 288, 505 P3d 953 (2022),[10] the trial court erred in failing to find that he "acted with at least criminal negligence as to the physical injury that [the victim] suffered" before finding him guilty of fourth-degree assault. Having reviewed the evidence and the trial court's speaking verdict, we conclude that if any error existed, it was harmless.

Affirmed.

---

[10] In *Owen*, the Supreme Court held that, under ORS 161.095(2), a culpable mental state applies to the resultant injury element of second-degree assault. 369 Or at 322. Accordingly, the state was required to prove, at a minimum, "that [the] defendant was criminally negligent with respect to the injury caused by the defendant's actions." *Id.*

**JAMES, P. J.,** concurring.

I join in the majority fully, except as to its analysis of joinder and severance. On that issue, I write separately. First, I am uncertain of the weight to give *State v. Miller*, 327 Or 622, 629, 969 P2d 1006 (1998), cited by the majority, in light of subsequent Oregon Supreme Court decisions such as *State v. Warren*, 364 Or 105, 109, 430 P3d 1036 (2018), discussing how a defendant's right to a fair trial on a charged offense can be jeopardized when evidence of other offenses is improperly before the jury as a result of joinder.

Second, I acknowledge that we have upheld joinder, despite concerns of cross-admissibility of evidence, when it is determined that such evidence is "sufficiently simple and distinct to mitigate the dangers created by joinder." *See, e.g.*, *State v. McMinn*, 145 Or App 104, 107, 929 P2d 1009 (1996); *State v. Luers*, 211 Or App 34, 43-44, 153 P3d 688, *adh'd to as modified on recons*, 213 Or App 389, 160 P3d 1013 (2007); *State v. Dimmick*, 248 Or App 167, 178, 273 P3d 212 (2012). I note, however that our case law on this point has its origins in federal law. *See, e.g.*, *State v. Meyer*, 109 Or App 598, 604, 820 P2d 861 (1991), *rev den*, 312 Or 677 (1992). Of importance, however, is that under federal law joinder on a "simple and distinct" rationale is not stand-alone, it requires concomitant limiting instructions to the jury.

Here, defendant's motion before the trial court alerted the court that, in assessing prejudice, "the court's inquiry must focus on the effectiveness of limiting instructions." The state agreed, and in its response to the motion to sever noted, "[a]s an additional precaution, a jury instruction could be given to the jury to ensure charges are considered separately." Although the state invoked a "sufficiently simple and distinct" rationale for joinder, the court's ruling did not specifically rely on that theory, which may explain why no jury instructions were discussed. I am hesitant to rely on a "sufficiently simple and distinct" rationale, given that this record does not include what jury instructions the trial court believed, at the time it made its ruling, would be sufficient to remedy any prejudice. And after the ruling defendant waived jury, so the record is now silent on that component.

Given the nonprecedential nature of our disposition, I need not expound on these issues further. Ultimately, I concur in the judgment here because I perceive the resolution to be controlled by our decision in *State v. Delaney*, 314 Or App 561, 564, 498 P3d 315, *rev allowed*, 369 Or 69 (2021). However, the Oregon Supreme Court has accepted review in that case, and its resolution of the issues present there, which include virtually all of the concerns I express here, will likely affect this case as well.